WINDHORST, J.
hOn December 3, 2015, plaintiff, Joanet-ta Spears, filed a petition for judicial review of a November 6, 2015 administrative agency decision rendered pursuant to La. R.S. 49:964 by defendant, Louisiana Board of Practical Nurse Examiners (the Board), revoking Mr. Spears’ practical nursing license.
FACTS AND PROCEDURAL HISTORY
On May 12, 2015, after receiving a report from Ochsner Medical Center-West Bank, the Board filed a Formal Complaint against Ms. Spears, a Licensed Practical Nurse (L.P.N.), alleging violations of La.' R.S. 37:969A, sections (4)(c), (d), (f) and (g) and La. Admin. Code 46:306T, sections (3), (4) and (8)(a), (b), (c), (g), (j), (p), (q) and (t).[1]
*683 | ¿The Board conducted a formal hearing on June 19, 2015, before Hearing Officer Myra L. Collins, L.P.N. Also present were Executive Director, M. Lynn Ansardi, R.N., and members of the Compliance Department, Kiana Gautreaux and Julie Pranger, R.N. Ms. Spears represented herself and the Board was represented by Jerry W. Sullivan, Esq. Ms. Spears testified at the hearing, as did Ruth Polk, R.N., Amanda Smith, R.N., B.S.N., Georgia Gaffney, R.N., Kristy Caleyo R.N., B.S.N., and Kimberly Lager of Global Safety Network, who performed drug and alcohol testing both in the field and in the office.

THE BOARD HEARING

The following facts were adduced at the Board hearing.
Ms. Spears was issued a license for practical nursing in the state of Louisiana on April 24, 2008. She was terminated from employment with Ochsner ,on January 14, 2015. Her license was summarily suspended, immediately after a positive breathalyzer test, and she was terminated from employment shortly, thereafter. Ms. Spears was notified that she was terminated not only because of the positive breathalyzer test, but also because of behaviors addressed in her performance improvement plan and excessive absenteeism.
According to the testimony of Ruth Polk, R.N., Ms. Polk had worked the night shift on December 26-27, 2014. At the change of shift, Ms. Polk was waiting while another nurse was giving a report to Ms. Spears, who was just starting her shift. Ms. Polk stated that within a minute of starting the report, Ms. Spears “nodded off, bobbing her head downward first and then her head went back'” Ms. Polk noted that Ms.' Spears had a “body odor” and that she was “diaphoretic” (sweaty) and non-responsive. Ms. Polk stated that she did not smell alcohol. As it appeared that Ms. Spears was having a seizure, a Code Blue was initiated.
Amanda Smith, R.N., testified that she was one of the house supervisors at Ochs-ner at that time. She responded to the Code Blue issued for Ms. Spears. |sWhen she arrived, Ms. Spears was diaphoretic, sitting in her chair almost “postictal.” She looked “dazed, very sweaty, didn’t look good.” Ms. Smith and an emergency room physician urged Ms. Spears to go to the ER, but Ms. Spears responded that she was fine and would drive herself home. Ms. Spears became very adamant that she not be examined, which Ms. Smith thought was outside of her general character and which put Ms. Smith on alert that something was not quite right. As a result Ms. Smith contacted Global Safety Network, to arrange for alcohol testing.
Kimberly Lager testified that she was an employee with Global, and that she performed drug and alcohol tests both in the office and in the field. On December 27, 2014, she was summoned to Ochsner, where she administered a breathalyzer test to Ms. Spears. Three' samples were taken fifteen minutes apart. The first sample revealed a result of 0.132%. Ms. Spears did not properly blow into the machine on the second test, and the result voided. The third sample, fifteen minutes after the second, yielded a result of 0.098%.
Ms. Lager further stated that the machine calibration was immediately checked after the testing, as was standard procedure anytime there was a positive reading. Finally, Ms. Lager testified that there were fifteen, minute intervals between tests because alcohol in the mouth, as in mouthwash, would dissipate after fifteen minutes.
Georgia Gaffney, R.N., testified that she was the unit supervisor of the telemetry unit and that Ms. Spears worked under *684 her supervision. Concerning Ms. Spears’ work habits, she did not timely complete nursing notes, and she would not carry her Spectralink communication device on her person to allow communication with other personnel. Ms. Spears had issues with absenteeism, as well as complaints that personnel could not locate her on the unit when she was working. Furthermore, there were several instances where Ms. Spears failed to timely 14administer medications and failed to timely communicate with physicians concerning their patients. Ms. Gaffney related one instance in which one of the physicians informed her that she observed Ms. Spears hiding behind a curtain in an empty patient room. Ms. Gaffney further testified regarding an incident in which it was believed that Ms. Spears did not timely administer medicine, resulting in a patient’s transfer to ICU, and then failed to notify the patient’s physician of that transfer. This incident .resulted in the physician issuing an order that Ms. Spears no longer be allowed to care for that physician’s patients. Ms. Gaffney identified a Performance Evaluation prepared in April 2014, in which it was marked that Ms. Spears “achieves expectations.” Ms. Gaffney stated that this evaluation meant that Ms. Spears had met the minimum requirements of what was expected of the job.
Ms. Spears’ next evaluation was held in November 2014. Ms. Gaffney had a conversation with Ms. Spears concerning attendance, untimely completion of nursing notes, untimely notification' to doctors of problems and untimely administration of medicines, as well as Ms. Spears’ failure to carry the Spectralink ' device. Also discussed was a complaint made by the physician concerning Ms. Spear’s performance with patients and care delivery, the doctor’s questioning of Ms. Spear’s abilities which resulted in the physician requesting that Ms. Spears not be assigned to any of her patients. This request led to Ms. Spears’ subsequent conflict with co-workers when that doctor’s patients were "accidentally assigned to Ms. Spears and then reassigned to her co-workers. A performance improvement plan was drafted, with the stipulation that Ms. Spears be assigned low acuity patients only.
In her interview with Ms. Spears concerning Ms. Spears’ termination from employment, Ms. Gaffney’s notes concerning the termination conversation reflect that Ms. Spears told her that she needed alcohol to sleep at night, otherwise she would be tired at work. Ms. Spears denied making this statement to Ms. Gaffney.
1 ¿Kristy Caleyo, R.N., B.S.N., testified that she had been employed at West Jefferson Medical Center in 2010-2011, and that Ms. Spears worked under her supervision. Despite repeated attempts to rehabilitate Ms. Spears, she continued to exhibit inadequate care for her patients. Ms. Spears was terminated from employment due to untimely administration of medications, failure to document patient information, failure to follow physician orders, and poor job performance.
Ms, Spears testified on her own behalf during the hearing. She stated that on December 27, 2014, she did not feel ill when she reported for work. She was getting a report, and the next thing she knew several nurses were standing around her, telling her’ that she had a seizure. Ms. Smith told her she needed to be examined, but she refused because she was embarrassed. The night charge nurse asked her several questions, which she was able to answer, and then stated that she needed to be examined. She acquiesced to this second request.
Ms, Spears testified that she agreed to take the Breathalyzer test and was surprised when the test showed that she had *685 ingested alcohol. She stated that, on the day prior, she had consumed one glass of wine that she started sipping at twelve o’clock with her lunch and finished at eight in the evening before she went to bed. She also stated that when she went to bed, she ingested one dose of Unisom, a sleeping aid. Ms. Spears denied telling Ms. Gaffney that she needed to have an alcoholic drink in order to sleep. Ms. Spears further stated that she felt like she was bullied by her co-workers and would call in sick for respite. She admitted that she was untruthful when telling her supervisors that she was ill and mentioned a history of Crohn’s disease to excuse her absences. Ms. Spears also addressed the incident when she was in an empty patient’s room, stating that she went to an empty room, once or twice, to collect her thoughts because she was constantly interrupted by her co-workers when she attempted to write her reports.

FINDINGS AND RULING OF THE BOARD

IflAfter consideration of the testimony and the exhibits filed, the hearing officer made findings of fact which were considered by the Board in its ruling. As stated by the Board in its decision, the hearing officer found the witnesses to be credible in their testimony, while finding Ms. Spears lacked credibility. The Board’s decision also included the findings of fact made by the hearing officer as follows:
2. It was proven that on December 27, 2014, while employed as a licensed practical nurse with Ochsner Medical Center-West Bank, the respondent became unresponsive during report. After initially refusing, the respondent submitted to an alcohol breathalyzer screen in the emergency department. The result of the breathalyzer screen was 0.98 [sic ].
3. The hearing officer found that the following allegations were proven:
• That on November 15, 2014, the respondent missed days, failed to complete nursing notes, failed to timely notify the doctor with problems and failed to give medications on time.
• That on November 18,2014, a physician questioned the respondent’s integrity -with her delivery of care. The physician requested that the respondent not be assigned to any of her patients because the physician felt the respondent was not competent to perform the duties. Specifically, a patient was transferred to ICU as a result of an increased heart rate. The physician believes if the patient would have received routine medications, the patient’s status change could have been prevented.
• That on December 19, 2014, the respondent was assigned to care for four of the physician’s patients after the request was made that she not care for any of the physician’s patients. While attempting to reassign the patients to comply with the physician’s concerns, several co-workers complained that the respondent was not very pleasant. This resulted in a performance improvement plan. It was noted that the respondent was previously coached on medications (late with meds-monitor), documentation (open charts, I/O review), MD notification of patient status changes and critical labs, communication, visibility on unit and limited choices of patients (need low acuity, honesty with care). It was noted that the respondent would not be assigned patients with the following: Triple lumen catheters, PICO lines, tra-cheostomies, cardiovascular drips, IV push medications or hyper alimentation.
4.The hearing officer-found.-that the allegations from West Jefferson Medical Center concerning the respondent were proven.
*686 • That on January 4, 2011, a patient received an order for Bethanechol PO one hour before or two hours after meals TID to start immediately. The respondent was aware of the order but failed to follow up and administer the medication as ordered due to the j 7medication not being in the computer system. The respondent received a verbal warning for failure to follow policy by not giving medications as ordered to a patient.)
• That on March 17, 2011, a patient made a complaint that the respondent refused to empty her bedside commode. After 2.5 hours the patient became “loud and very upset’ that the commode was not emptied. The respondent was counseled for poor job performance.
• That on April 11, 2011, the respondent discharged a patient. The medication reconciliation was signed by the physician after 1 pm. At 7pm the patient was waiting for an ambulance; however, the respondent failed to complete the necessary paperwork for EMS causing a delay in the patient’s discharge.
• That on May 30, 2011, the respondent failed to document a blood pressure for a patient whose blood pressure had been elevated. The patient received Ni-tropaste at 5pm. The respondent failed to perform any additional interventions and failed to perform follow-up vital signs. At 8pm the oncoming nurse assessed the patient, found the patient’s blood pressure to be 197/94, and had to intervene with PRN medications. The respondent was counseled for poor job performance.
• That on July 6, 2011, a patient bad a blood pressure reading of 183/82. According to the physician orders, the patient should have received 1 Omg Hy-dralazine IV. The respondent failed to follow physician orders. A patient’s point of care capillary glucose was 178. According to physician orders, the patient should have received 2 units of insulin per sliding scale. The respondent failed to follow physician orders.
The respondent was terminated from the facility on July 15, 2011, due to progressive disciplinary process and failure to follow physician orders.
On November 6, 2015, the Board rendered its decision which included the above cited findings of fact. In its decision, the Board issued an Order that permanently revoked Ms. Spears’ license and provided that she could never practice as a practical nurse in the state of Louisiana. The Board further imposed a fine of $500.00 and a hearing assessment fee of $500.00.

JUDICIAL REVIEW

On December 3, 2015, Ms. Spears filed a Petition for Judicial Review pursuant to La. R.S. 49:964 in the district court. In her petition, she alleged that: 1.) the decision of the Board was contrary to the law and evidence, 2.) that there was newly discovered evidence important to the issues that could not have been obtained before or during the hearing, 3.) that issues needed to properly dispose of |sthe matter were not previously considered, 4.) that the decisions of the Board were not supported and sustainable by a preponderance of the evidence, and 5.) that the decisions of the Board were “arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.”
Ms. Spears’ Petition for Judicial Review was heard on May 4, 2016. After reviewing the evidence introduced and the transcript of the administrative hearing and listening to argument of counsel, the court took the matter under advisement. On May 25, 2016, the trial court rendered judgment *687 affirming the order of the Board. Ms. Spears now appeals to this Court.
DISCUSSION
In this appeal, Ms. Spears assigns as error the following:
1. The trial court manifestly erred in failing to find that the appellant had a substantial right in appellant’s nursing license that could not be taken away without satisfying due process.
2. The trial court manifestly erred in finding that the appellee proved by a preponderance of evidence that appellant’s conduct violated La. R.S. 37:969(a)(4) and LAC 46, part xlvii, subpart 1, section 306(t)(7).
3. The trial court erred in failing to find that introduction into evidence of unauthenticated documents was legal error.
4. The trial court erred in failing to find that the Board’s decision lacked sufficiency of evidence to support its findings of facts.
5. The trial court erred in failing to find that the Board’s decision was arbitrary, capricious and an abuse of discretion.
6. The trial court erred in failing to find that the Board failed to afford appellant an opportunity to comply.
7. The trial court erred in failing to find that commingling of roles constituted unlawful procedure.

STANDARD OF REVIEW

The standard of review of an administrative agency’s decision is narrower than the standard of review applied to civil and criminal appeals. Lawhead v. La. State Bd. of Practical Nurse Exam’rs, 07-1593 (La. App. 4 Cir. 10/28/08), 995 So.2d 664, 668. La. R.S. 49:964G sets forth the exclusive grounds upon which an administrative agency’s decision may be reversed or modified on appeal. Id. La. R.S. 49:964G states that:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
In an administrative agency case, the district court acts as a reviewing court. The district court’s standard of review in reviewing the factual findings of the administrative agency is manifest error. The district court may only reverse the administrative tribunal’s exercise of discretion and conclusions upon finding that the agency’s action was arbitrary and capricious. Haygood v. La. State Bd. of Dentistry, 11-1327 (La. App. 4 Cir. 09/26/12), 101 So.3d 90, 94. “It is elementary that a court’s function is not to weigh de novo the *688 available evidence and to substitute its judgment for that of the agency.” Save Ourselves, Inc. v. La. Environmental Control Commission, 452 So.2d 1152, 1159 (La. 1984).
In Armstrong v. La. State Bd. of Med. Examiners, 03-1241 (La. App. 4 Cir. 02/18/04), 868 So.2d 830, 838, the court said:
A reviewing court should not set aside an administrative agency’s decision to impose a particular sanction unless that decision can be characterized as arbitrary, capricious or an abuse of discretion. “The imposition of ah administrative sanction is in the nature of a | ^disciplinary ' measure. In deciding what, if any, discipline to impose, the Board may be strict, moderate or lenient.”
The jurisprudence has also recognized that “in reviewing such [administrative] actions, courts must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow member of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession.” (Citations omitted).
An administrative agency’s conclusion is “capricious” when it has no substantial evidence to support it. Likewise, the word “arbitrary” implies a disregard of evidence or the proper weight théreof. Sterling v. Department of Public Safety & Corrections, Louisiana State Penitentiary, 97-1960 (La. App. 1st Cir. 09/25/98), 723 So.2d 448, 455; Marsellus v. Dep’t of Pub. Safety & Corr., 04-0860 (La. App, 1 Cir. 09/23/05), 923 So.2d 656, 661.
Our appellate review is de novo, without regard for the decision of the trial court. Tomorrow’s Investors, LLC v. State, 11-1616 (La. App. 1 Cir. 03/23/12), 92 So.3d 364, writ denied, 12-0886 (La. 06/01/12), 90 So.3d 444:
Once a final judgment is rendered by the trial court in reviewing an administrative final' decision in an ádjudicátion proceeding, an aggrieved party may seek review of same by appeal to the appropriate appellate court, and on review of the trial court’s judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the trial court, just as no deference is owed by the Louisiana Supreme Court to factual .findings or legal conclusions of the court of appeal. Id. at 366.
Finally, “Given the jurisprudential presumption of . correctness of an agency’s actions, [appellant, in this case Ms. Spears] bears the burden of proving the record contains no facts that would establish the validity of the charges levied against her.” Cranford v. La. State Bd. of Practical Nurse Examiners, 08-209 (La. App 4 Cir. 10/01/08), 996 So.2d 590, 601.
Ms. Spears first contends that the trial court erred in failing to find that her due process rights were-violated during the revocation proceedings. She further | ¶ ¶ argues that her license was revoked based on hearsay evidence and unreliable Breathalyzer results.
The record reflects that ‘ Ms. Spears was given notice of the hearing and of the charges against her and that she was provided, the documentation entered into evidence at the hearing. Ms. Spears was afforded an opportunity to question the witnesses against her, and she was able to testify on her own behalf. In this appeal, . Ms. ■ Spears contends that she was not given names, referenced in the complaints, however she did not object at the hearing and her questioning and testimony reflected that she knew the identity of those persons.
*689 Ms. Spears next contends that the evidence presented against her was inadmissible hearsay. However, hearsay evidence is admissible in administrative hearings, recognizing that the inability to cross-examine the declarant affects the weight that the evidence carries. Louisiana Household Good Carriers v. La. Pub. Serv. Comm’n, 99-3184 (La. 06/30/00), 762 So.2d 1081, 1089-90. In Chaisson v. Cajun Bag & Supply Co., 97-1225 (La. 03/04/98), 708 So.2d 375, 382, the court said that hearsay evidence “can qualify as ‘competent evidence,’ provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon.” In this case, the evidence consisted of records kept by the employer hospitals during their regular course of business, documenting interactions with Ms. Spears. Ms. Spears did not object to those records, and did not deny that those instances had occurred. Instead she offered her versions of what occurred during those times. Although the evidence may have contained hearsay statements by certain medical professionals and patients, we do not find that the Board erred in allowing that evidence during the hearing.
Ms. Spears also challenges the results of the Breathalyzer test, alleging that the Board should not have considered those results because the' person who calibrated the machine for Global did not testify. The procedures for maintenance haand calibration were set forth by Ms. Lager, who performed the test. She further stated that there was nothing to show that these procedures were not followed in Ms. Spears’ case.
Accordingly, we find that Ms. Spears’ due. process rights were not violated. This allegation is without merit.
Second, Ms. Spears contends that the trial court erred in failing to find that evidence presented was insufficient to support the Board’s findings, and in failing to find that the Board’s decision to revoke her license was arbitrary and capricious and an abuse of discretion,
Ms. Spears appears to argue that the evidence failed to show that she was “habitually intemperate” so as to warrant revocation of her license. However, it is clear from the Board’s ruling that Ms. Spears’ license was revoked for several violations, including evidence that reflected “incompetence by reason of neglect, habit, or other causes,”' and “unprofessional conduct” as described in the Louisiana Administrative Code, Title 46, Part XLVII, governing registered nurses and practical nurses such as Ms. Spears.
Reviewing the evidence as a whole, we find that Ms. Spears has failed to meet her burden of proving that the record contains no facts to establish the validity of the charges against her. We further find that the Board’s decision was not arbitrary and capricious, and was supported and sustainable by a preponderance of the evidence. This argument is meritless.
Third, Ms. Spears argues that the trial court.erred in failing to find error in the Board’s consideration of “stale” claims against her. In this allegation; Ms. Spears argues that the hearing officer erred in considering her employment record- from West Jefferson Medical Center for the time period of January 4, 2011 through July 6,2011.
' hsAt the time the formal complaint against Ms. Spears was filed, La. R.S. 37:21A provided that:
Unless a special law is applicable, no proceeding of any kind may be initiated by a professional or occupational board or commission as follows:
# * #
*690 (4) If the nature of the complaint is based on a license or rules violation, no proceeding may be initiated after five years from the date of the act or omission.
The allegations of deficient performance narrated in West Jefferson Medical Center’s employment records and described by Ms. Spear’s supervisor, Ms. Caleyo, and the hearing were within the five year period of La. R.S. 37:21,[2] within which a complaint for that particular conduct could have been filed. Ms. Spears cites no authority and we have found none which would dictate that such allegations could not be considered in a proceeding initiated by a subsequent employer. This allegation is without merit.
Fourth, Ms. Spears argues that the Board failed to afford her an “opportunity to comply” prior to revoking her license. She refers to the recommendations made by the Hearing Officer at the close of the hearing, and contends that it was error for the Board to terminate her license without giving her an opportunity to comply with those recommendations. In support of this argument, she cites La. R.S. 49:961C which states:
No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined. (Emphasis added.)
| uThe record shows that Ms. Spears was notified of the facts and/or conduct which would warrant that the Board take action, and that she was given an opportunity to address these allegations and could have attested to any actions she had taken to show compliance or remedy the deficiencies prior to the institution of agency proceedings. La. R.S. 49:9610 does not require that the Board make recommendations and that the licensee be given an opportunity to show compliance with those recommendations after institution of proceedings. This allegation of error is without merit.
Fifth, Ms. Spears argues that the commingling of roles during the hearing prejudiced her substantial rights and, therefore, the Board’s decision should be reversed. We find no merit to this allegation. Ms. Spears alleges that Ms. Ansardi served as both the chairman of the Board and the Hearing Officer. However, from the record it is clear that Myra Collins, and not Ms. Ansardi, served as the Hearing Officer. In addition, while Ms. Spears contends that the Board’s attorney, Mr. Sullivan, “functioned in multiple capacities,” the record clearly shows that Ms. Sullivan functioned as attorney for the Board and in no other capacity. This assignment of error has no merit.
In áddition to her assigned errors, Ms. Spears argues that the Board’s decision creates collateral consequences, alleging that because the Board reported the revocation of her license to “all required data *691 banks and agencies as required by law,” which includes the U.S. Inspector General, she will be unable to gain employment in a facility that receives federal funding. She also contends that “the fining and assessing of costs of $1,000 against someone whose livelihood has been [stripped] away is an abuse of discretion and unwarranted. Ms. Spears cites no authority for these arguments. These arguments are without merit.
^CONCLUSION
For the above discussed reasons, we find that the Louisiana State Board of Practical Nurse Examiners was not arbitrary and capricious in its decision to revoke Ms. Joanetta Spear’s L.P.N. license. We therefore affirm the decision of the trial court which affirmed the ruling of the Louisiana State Board of Practical Nurse Examiners.
AFFIRMED

, La. R.S. 37:969A(4)(c)(d)(f)(g) provides:
A. The board shall:
[[Image here]]
(4) Conduct hearings upon charges calling for discipline of a licensee, or for revocation, denial or suspension of a license issued or applied for under this Part upon proof that ■the
[[Image here]]
(c) Is unfit, or incompetent by reason of negligence, habit, or other causes; or
(d) Is habitually intemperate or is addicted to the use of habit forming drugs; or
[[Image here]]
(f) Is guilty of unprofessional conduct; or
(g) Has violated any provisions of this Part. LAC 46:XLVII.306T(3)(4) and (8)(a)(b)(c)(g)(j)(p)(q)(t) provides:
[[Image here]]
T. The grounds for disciplinary proceedings include, but are not limited to:
[[Image here]]
3. being unfit, or incompetent by reason of negligence, habit or other causes; 4. being habitually intemperate or addicted to the use of habit-forming drugs;
[[Image here]]
8. being guilty of unprofessional conduct; unprofessional conduct includes, but is not limited to the following:
a. failure to practice practical nursing in accordance with the standards normally expected;
b. failure to utilize appropriate judgment in administering nursing practice;
c. failure to exercise technical competence in carrying out nursing care;
[[Image here]]
g. improper use of drugs, medical supplies, or patients’ records;
j, intentionally committing any act that adversely affects the physical or psychosocial welfare of the patient;
[[Image here]]
p. inappropriate, incomplete or improper documentation;
q. using or being under the influence of alcohol while on duty, and/or while making application for employment, or using or being under the influence of drugs which impair judgment while on duty, or using or being under the influence of illegal drugs whether on or off duty;
[[Image here]]
t. violating any provisions of R.S. 37:961 et seq. (the practical nursing practice act), as amended or aiding or abetting therein.

. La. R.S. 37:21 was amended in 2016 to exempt the Louisiana State Board of Practical Nurse Examiners from the limitations on disciplinary proceedings set forth in that statute. 2016 La. Act 368, eff. August 1, 2016.