IN THE MATTER OF: ASHAEL FORD

VERSUS

THE LOUISIANA STATE BOARD OF
PRACTICAL NURSE EXAMINERS

NO. 22-CA-481

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 820-473, DIVISION "B"
HONORABLE R. CHRISTOPHER COX, III, JUDGE PRESIDING

April 26, 2023

**CORNELIUS E. REGAN**
**JUDGE, PRO TEMPORE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and Cornelius E. Regan, Pro Tempore

<u>**AFFIRMED**</u>

**CER**
**MEJ**
**SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

PLAINTIFF/APPELLANT,
ASHAEL FORD
    In Proper Person

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA STATE BOARD OF PRACTICAL NURSE EXAMINERS
    John W. Becknell, III

**REGAN, J.**

Plaintiff, Ashael Ford, appeals the district court's June 2, 2022 Judgment which affirmed the decision and order of the Louisiana State Board of Practical Nurse Examiners (the Board) to revoke Ms. Ford's practical nursing license. For the reasons stated more fully below, we affirm the district court's June 2, 2022 Judgment.

## FACTS AND PROCEDURAL HISTORY

On August 20, 2019, the Board received a complaint from Ms. Ford's employer, Advantage Medical Professionals (Advantage), alleging that on August 4, 2019, Ms. Ford failed to assess an inmate at the St. Martin Parish Correctional Center (SMPCC), where she was assigned to work on a temporary basis.[1] The complaint further stated that the inmate went to the hospital later that day and was admitted to the intensive care unit. The complaint raised a second issue regarding an incident involving Ms. Ford on August 12, 2019, where Ms. Ford left the SMPCC without notifying proper personnel at Advantage or SMPCC, leaving the jail without a nurse. The complaint also alleged that Ms. Ford previously left the jail medical unit for extended periods of time without notifying the jail staff or management at Advantage.

On September 5, 2019, the Board sent a notice to Ms. Ford regarding these allegations and requested that she provide a written statement in response and her employment history for the past five years. On September 16, 2019, Ms. Ford filed a written response denying that she failed to properly care for the inmate at the SMPCC on August 4, 2019, and further claiming that she informed Advantage on August 12, 2019, that she would be leaving work because she was sick. She claimed that the "on call" person indicated that she would contact another nurse to

---

[1] Advantage is a temporary staffing agency.

come to SMPCC. She also claimed that she told two deputies at the jail that she was leaving, but that another nurse would be coming to the jail.

On October 10, 2019, the Board sent a second notice to Ms. Ford regarding additional violations resulting from her termination of employment by Advantage and SMPCC, as well as additional complaints from these entities that Ms. Ford disregarded the chain of command, left the jail clinic unattended and that the warden and other jail employees at SMPCC reported that she had a negative attitude. Ms. Ford submitted a response on October 21, 2020, contesting the allegations.

The Board commenced its investigation by issuing subpoenas to Ms. Ford and her former employers. The Board filed a formal complaint against Ms. Ford on February 19, 2021, notifying her that the trial court would conduct a formal virtual hearing on March 19, 2021. The complaint alleged that Ms. Ford violated La. R.S. 37:969(A)(4), specifically Sections (a), (c), (f) and (g), as well as La. Admin. Code 46:XLVII:306T, Sections (1), (3) and (8)(a),(b),(c),(h),(i),(j),(l),(o),(p) and(t).[2]

---

[2] La. R.S. 37:969A(4)(a)(c)(f)(g) provides:

A. The board shall:
                    * * *
(4) Conduct hearings upon charges calling for discipline of a licensee, or for revocation, denial or suspension of a license issued or applied for under this Part upon proof that the person:

(a) Is guilty of fraud or deceit in procuring or attempting to procure a license to practice practical nursing; or
                    * * *
(c) Is unfit, or incompetent by reason of negligence, habit, or other causes; or

                    * * *
(f) Is guilty of unprofessional conduct; or
(g) Has violated any provisions of this Part.


LAC 46:XLVII.306T(1)(3) and (8)(a)(b)(c)(h)(i)(j)(l)(o)(p)(t) provides:

                    * * *
T. The grounds for disciplinary proceedings include, but are not limited to:

1. being guilty of fraud or deceit in procuring or attempting to procure a license to practice practical nursing;
                    * * *

*The Board Hearing*

The Board conducted a formal hearing on March 19, 2021, before a hearing officer. The following facts were adduced at the Board hearing. Lt. Camellia Rossyion, an administrative lieutenant at SMPCC, testified regarding the initial complaint regarding Ms. Ford's failure to evaluate the inmate at SMPCC. Lt. Rossyion explained that on August 4, 2019, she noticed an inmate who could not walk on his own and who was slurring his speech. Lt. Rossyion was particularly concerned because the inmate's face looked crooked, which led her to believe the inmate was having a stroke and needed medical attention. Lt. Rossyion testified that she reported the inmate's condition to Ms. Ford and another nurse. Approximately an hour later, Lt. Rossyion realized that no one had assessed the inmate so she found Ms. Ford and the other nurse and brought them to the inmate. Lt. Rossyion testified that Ms. Ford then told her that an emergency room doctor cleared the inmate the night before, so she did not need to check on him any further.

---

3. being unfit, or incompetent by reason of negligence, habit or other causes;

\* \* \*

8. being guilty of unprofessional conduct; unprofessional conduct includes, but is not limited to the following:

a. failure to practice practical nursing in accordance with the standards normally expected;
b. failure to utilize appropriate judgment in administering nursing practice;
c. failure to exercise technical competence in carrying out nursing care;

\* \* \*

h. misappropriating personal items of an individual or the agency;
i. falsifying records;
j. intentionally committing any act that adversely affects the physical or psychosocial welfare of the patient;

\* \* \*

l. leaving a nursing assignment without properly notifying the appropriate personnel;

\* \* \*

o. being guilty of moral turpitude;
p. inappropriate, incomplete or improper documentation;

\* \* \*

t. violating any provisions of R.S. 37:961 et seq. (the practical nursing practice act), as amended or aiding or abetting therein.

Lt. Rossyion then decided to takes matters into her own hands and had another deputy carry the inmate to her office so she could contact one of his friends. According to Lt. Rossyion, a family member then posted a bond and took the inmate to the hospital. Lt. Rossyion explained that she later learned the inmate suffered a stroke and was admitted to the ICU.

Kristie Manuel, employed by Lafayette General Health as a director of medical services at SMPCC, also testified at the hearing. She explained that she investigated the complaint against Ms. Ford regarding her alleged failure to assess the inmate displaying signs of a stroke. As part of her investigation, Ms. Manuel questioned Ms. Ford, as well as the deputies and warden at SMPCC. Ms. Manuel testified that when she asked Ms. Ford why she failed to assess the inmate and document the incident, Ms. Ford responded that she could not recall or alternatively did not have the chance to document it. According to Ms. Manuel, Ms. Ford should have conducted a physical or medical assessment of the inmate, including taking his vital signs, blood pressure, temperature, checking blood sugars, and deciding if the inmate required a hospital visit. Mrs. Manuel's investigation also revealed that Ms. Ford left the SMPCC without notifying anyone while patients were under her care, and displayed a disrespectful attitude towards deputies and the warden at the facility.

The final witness to testify at the administrative hearing was Angela Totora, Director of Nursing at Advantage and Ms. Ford's supervisor. Ms. Totora testified that she received similar complaints regarding Ms. Ford's inadequate performance and behavior from SMPCC, including the report that she failed to assess an inmate suspected of suffering from a stroke in August 2019. Ms. Totora explained that SMPCC cancelled Ms. Ford's contract and prohibited her from returning to the facility after this incident. As a result of her termination by SMPCC, Advantage also terminated Ms. Ford.

Ms. Totora also provided additional testimony regarding the incident when Ms. Ford left the SMPCC unattended on August 12, 2019. Ms. Totora explained that Ms. Ford called Advantage stating she wanted to leave due to illness, but agreed to pass medications to her patients first and then call the agency back. Ms. Totora testified that Ms. Ford never made the second call and left the facility unattended. She explained that a nurse cannot leave her assignment until relief arrives and abandoning a nursing position is a serious infraction. Due to the egregious nature of the infractions, Advantage designated Ms. Ford as a "Do Not Return (DNR)" at all five facilities under the SMPCC's control, which is only imposed in severe matters.

Ms. Totora also testified regarding an additional incident where Ms. Ford disregarded the chain of command by refusing to complete a specific directive she made to Ms. Ford. Ms. Totora explained that she asked Ms. Ford to go through charts, write down medications and send the information to the new medical director. Ms. Ford failed to complete the task and when asked why, Ms. Ford claimed she did not know what she was supposed to do. Ms. Totora explained that this was a simple task and she believed Ms. Ford was being disrespectful and refused to perform the task.

The hearing officer also reviewed records regarding Ms. Ford's prior employment history at Abbeville Hospital. The records indicated that Ms. Ford was designated a DNR and not allowed to return for work at the facility due to her poor work performance at this hospital. The deficient conduct noted was poor chart documentation and shift change reports, as well as studying while on duty.

Finally, the hearing officer received evidence of Ms. Ford's prior disciplinary actions before the Board. In 2016, the Board determined that Ms. Ford falsified her student admission application by failing to disclose all of her prior arrests, resulting in a formal reprimand. The hearing officer also received

evidence that on September 4, 2019, Ms. Ford falsified another application for a multistate practical nursing license by answering "No" to the question of whether she had any prior disciplinary actions with respect to her license and failed to disclose her prior reprimand by the Board in 2016. Ms. Ford also failed to disclose the 2016 reprimand on her employment application with Advantage. The complaint alleged that the falsification of these applications constituted evidence of fraud or deceit.

*Findings of the Hearing Officer and Ruling of the Board*

After considering the evidence, the hearing officer made extensive findings of fact which the Board considered in its ruling issued on July 30, 2021. As discussed below, the hearing officer found the witnesses who testified at the hearing to be credible:

> The hearing officer found the three witnesses' testimony credible. Each witness had independently experienced or witnessed incidents with the respondent which were inappropriate or unprofessional, with the most significant being the failure to assess and document the assessment of an inmate displaying symptoms requiring medical attention.
>
> Although the respondent chose to not testify at the hearing, in her written response to the board on September 16, 2019, the respondent wrote that she was informed by a deputy that an inmate had "stroke like symptoms" (Exhibit E-2). She further wrote, "We made this judgment just to lay eyes on Mr. Z. At [t]his time there was no policy and procedure in the jail saying we had to document on an inmate we were checking on."
>
> She further wrote, "Grant it [sic], an LPN should not complete initial assessments of inmates returning from the hospital, as this would be out of the scope of practice according to state board regulations." The reported behaviors and these statements clearly indicate that the respondent is guilty of unprofessional conduct, that she failed to practice nursing in accordance with the standards normally expected, that she intentionally committed an act that adversely affected the physical welfare of a patient, and she failed to utilize appropriate judgment in administrating nursing practice.
>
> The respondent further attempted to explain in writing about her leaving an assignment on August 12, 2019, after she had called "the lady who answered the phone" at the New Orleans staffing office of her plans to leave after she passed her medications (Exhibit E-3);

however, she had no corroborating evidence and the testimony of the two witnesses was more credible. She further admitted in writing to leaving the clinic, "When leaving the clinic not the unit for extended periods of time. I can recall myself leaving the clinic for work keys that was issued to us. Why? Because sometimes I would forget the keys home." [Sic]Leaving a nursing assignment without properly notifying appropriate personnel is clear evidence of unprofessional conduct.

Based on the evidence presented and the hearing officer's findings, the Board found that Ms. Ford violated all of the provisions set forth in the complaint outlined above. As a result, the Board revoked Ms. Ford's practical nursing license and imposed a fine of $1,500.00 and a hearing assessment fee of $1,500.00.

*District Court Review*

On August 17, 2021, Ms. Ford filed a timely petition for judicial review in the 24th Judicial District Court for the Parish of Jefferson. Following a hearing, the district court affirmed the Board's July 30, 2021 Order, and determined that Ms. Ford failed to meet her burden of proof to establish that the Board's decision violated La. R.S. 49:964(G).[3] The district court issued a written judgment on June 2, 2022.

Ms. Ford filed a timely motion for devolutive appeal from the district court's judgment on August 8, 2022, and the district court signed the order of appeal on August 10, 2022. This appeal follows.

## LAW AND DISCUSSION

Pursuant to La. R.S. 49:978.1(A) and (B), a party aggrieved by a final agency decision in an adjudication proceeding is entitled to have that decision reviewed initially by the district court of the parish in which the agency is located. The agency shall submit to the reviewing court the original or certified copy of the entire record of the administrative proceeding under review unless stipulated to the

---

[3] La. R.S. 49:964 was redesignated without any amendments to La. R.S. 49:978.1 by Acts 2022, No. 663, § 1.

contrary by the parties. La. R.S. 49:978.1(D); *St. John the Baptist Parish v. Dutch Bayou Development Company, Inc.*, 19-357 (La. App. 5 Cir. 1/29/20), 290 So.3d 292, 297.

A party aggrieved by the district court's decision is also entitled to appeal to the appropriate appellate court as in other civil cases. La. R.S. 49:979. When an appellate court reviews the district court's judgment, the appellate court does not owe deference to the district court's factual findings or legal conclusions, "just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal." *Spears v. Louisiana Board of Practical Nurse Examiners*, 16-587 (La. App. 5 Cir. 6/15/17), 223 So.3d 679, 687, *quoting Tomorrow's Investors, LLC v. State*, 11-1616 (La. App. 1 Cir. 3/23/12), 92 So.3d 364, 367, *writ denied*, 12-0886 (La. 6/1/12), 90 So.3d 444). An appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. *Sylvester v. City of New Orleans Through Code Enforcement and Hearings Bureau*, 17-283 (La. App. 4 Cir. 10/11/17), 228 So.3d 285, 287.

La. R.S. 49:978.1(G) sets forth the exclusive grounds upon which a reviewing court may be reverse or modify an administrative agency's decision on appeal. *Spears*, 223 So.3d at 687. La. R.S. 49:978.1(G) provides that:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Finally, "[g]iven the jurisprudential presumption of correctness of an agency's actions, [the appellant] bears the burden of proving the record contains no facts that would establish the validity of the charges levied against her. *Spears*, 223 So.3d at 688, *quoting Cranford v. La. State Bd. of Practical Nurse Examiners*, 08-209 (La. App 4 Cir. 10/01/08), 996 So.2d 590, 601.

*Due Process*

Ms. Ford first argues that the Board revoked her license without "satisfying due process." La. R.S. 49:977.3(C) provides that "[n]o revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license."

Our review of the record indicates that the Board sent Ms. Ford two notices outlining the allegations against her and provided her with an opportunity to respond. The Board's investigation included obtaining statements from Ms. Ford and obtaining records from her former employers. Ms. Ford acknowledged on the record that the Board provided her with all documents introduced as exhibits prior to the hearing. The Board called three witnesses to testify regarding the complaints against Ms. Ford, and her counsel cross-examined these witnesses. Ms. Ford did not choose to testify and only offered one exhibit in addition to the exhibits offered by the Board. The notices sent by the Board, as well as the

investigation and hearing, provided Ms. Ford with adequate due process. Therefore, we find this argument to be without merit.

*Hearsay and Competency of Evidence*

Ms. Ford next argues that the evidence did not support the findings against her because the hearing officer and Board relied on hearsay and incompetent evidence.

Hearsay evidence, if competent and relevant, is admissible in administrative hearings. *Louisiana Household Good Carriers v. La. Pub. Serv. Comm'n*, 99-3184 (La. 6/30/00), 762 So.2d 1081, 1089-90; *Spears*, 223 So.3d at 689. Courts recognize that the inability to cross-examine the declarant affects the weight that the evidence carries. *Id.* In *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 3/04/98), 708 So.2d 375, 382, the Louisiana Supreme Court declared that hearsay evidence "can qualify as 'competent evidence,' provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon."

Though it is difficult to discern the exact evidence Ms. Ford claims is hearsay, she presents arguments generally claiming that the testimony of the three witnesses presented at the hearing was "incompetent." She first complains that Lt. Rossyion's testimony is unsubstantiated because she was not qualified to render a diagnosis of the inmate, and neither she nor the Board produced any evidence to establish that the inmate had a stroke. We agree with the Board's argument in response that whether or not the inmate was actually diagnosed with a stroke is irrelevant. The violation presented by the Board was Ms. Ford's failure to assess the inmate and failure to document the incident after Lt. Rossyion alerted Ms. Ford to her concerns about the inmate's condition. Lt. Rossyion testified that she asked Ms. Ford to assess the patient's condition, but Ms. Ford refused, claiming it was unnecessary because an emergency room doctor assessed and "cleared" the inmate

the previous night. Ms. Ford's reasoning fails to account for the possibility that the inmate suffered another medical emergency after he arrived at SMPCC.

Further, the hearing officer indicated in her findings that she found Lt. Rossyion's testimony to be credible and competent. The hearing officer also found that Ms. Ford's explanations indicated that she was "guilty of unprofessional conduct, that she failed to practice nursing in accordance with the standards normally expected, that she intentionally committed an act that adversely affected the physical welfare of a patient, and she failed to utilize appropriate judgment in administering nursing practice." As explained above, La. R.S. 49:978.1(G)(6) provides that due regard shall be given to the determination of credibility issues, when the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not. Accordingly, Ms. Ford fails to establish how this testimony lacks competency.

Ms. Ford next complains that Kristie Manuel's testimony was incompetent because she did not have first-hand knowledge regarding the incident with the inmate. However, Ms. Manuel explained that in her position she was responsible for investigating incidents or complaints regarding medical staff at SMPCC, including the complaint that Ms. Ford failed to properly assess the medical needs of an inmate. She admitted that she was not an eyewitness to the incident, but as explained more fully above, she testified regarding the information she gathered from her interviews with Ms. Ford and jail personnel. Again, the hearing officer found this testimony credible and competent.

Finally, Ms. Ford does not point to any reasons why Ms. Totora's testimony should be found incompetent. Rather, she contests the veracity of Ms. Totora's testimony regarding Ms. Ford's failure to notify Advantage prior to leaving SMPCC on August 12, 2019. Ms. Ford argues that she notified Advantage that she

was leaving the jail facility and claims that Ms. Totora failed to take steps to secure a replacement nurse. Again, the hearing officer found Ms. Totora's testimony to be more credible than the explanation Ms. Ford provided in her written response and further determined that "[l]eaving a nursing assignment without properly notifying appropriate personnel is clear evidence of unprofessional conduct."

Ms. Ford had the opportunity to cross-examine these witnesses. She could have also presented evidence to refute their testimony. Our review of the record indicates that the Board relied on competent testimony and documents to revoke Ms. Ford's practical nursing license. Lt. Rossyion provided testimony regarding the situation she personally witnessed with respect to the inmate she suspected to be experiencing a stroke and her interactions with Ms. Ford. Ms. Manuel and Ms. Totora testified regarding the information and documents they discovered and received during their investigation of the complaints against Ms. Ford in their supervisory capacity. Furthermore, Ms. Ford did not object to the introduction of any exhibits that the Board offered into evidence at the hearing. Even if any of the testimony or documents at issue constituted hearsay evidence, our review indicates that the evidence presented was competent and possessed the requisite degree of reliability and trustworthiness such that a reasonable person would rely upon it.

*Fraud or Deceit*

Finally, Ms. Ford contends the Board erred by find that she committed fraud or deceit. The ruling indicates that the finding of fraud arose from the false applications submitted by Ms. Ford. We find that the exhibits presented on this issue indicate that the finding is supported by a preponderance of the evidence. The Board submitted evidence of the 2016 Consent Agreement/Order that Ms. Ford entered into with the Board after she failed to disclose her prior arrests as required in her student admission application. The Board presented evidence that Ms. Ford failed to disclose this reprimand in subsequent applications submitted in

2018 to Advantage and in 2019 on her multistate application. Ms. Ford's prior reprimand establishes that Ms. Ford possessed knowledge of the consequences for failing to truthfully respond to such applications. Furthermore, Ms. Ford did not present any evidence to address her failure to disclose the reprimand in her subsequent applications. Accordingly, we find that the Board proved Ms. Ford is guilty of fraud or deceit in procuring or attempting to procure a license to practice practical nursing.

*Arbitrary or Capricious/Preponderance of the Evidence Review*

After extensive review of the administrative record, we do not find that the Board's decision to revoke Ms. Ford's practical nursing license violated any of the exclusive grounds provided under La. R.S. 49:978.1(G) that would allow the reversal or modification of the Board's decision to revoke Ms. Ford's license. We did not have the opportunity to observe the demeanor of the witnesses and therefore, we give due regard to the credibility determinations of the hearing officer and the Board. The evidence supports the Board's finding that Ms. Ford committed numerous violations of the regulations governing practical nurses. Accordingly, we do not find that the Board's decision was arbitrary or capricious. We further find that after conducting a review of the entire record in this matter, the Board's decision is supported by a preponderance of the evidence.

## CONCLUSION

For the reasons discussed above, we affirm the district court's judgment affirming the Louisiana State Board of Practical Nurse Examiners' order to revoke appellant Ashael Ford's practical nursing license.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 26, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-481**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE R. CHRISTOPHER COX, III (DISTRICT JUDGE)
DAVID R. ADEN (APPELLANT)          JOHN W. BECKNELL, III (APPELLEE)

**MAILED**
ASHAEL FORD  (APPELLANT)
608 POYDRAS STREET
LAFAYETTE, LA 70501