JOSEPH LAROCCA AND
LAROCCA AUTO SALES, INC.

VERSUS

LOUISIANA MOTOR VEHICLE
COMMISSION

NO. 22-CA-197

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 819-515, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

May 10, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and John J. Molaison, Jr.

<u>**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**</u>
   **SJW**
   **RAC**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
LAROCCA AUTO SALES, INC.
    Robert G. Harvey, Sr.

COUNSEL FOR DEFENDANT/APPELLANT,
LOUISIANA MOTOR VEHICLE COMMISSION
    Adrian F. LaPeyronnie, III

**WINDHORST, J.**

Appellant, Louisiana Motor Vehicle Commission, appeals the trial court's March 10, 2022 judgment, which reversed and dismissed an administrative adjudication against appellee, LaRocca's Auto Sales, Inc. For the reasons that follow, we affirm in part the trial court's judgment dismissing the administrative adjudication. The trial court's judgment is reversed in part and remanded for further proceedings as to the award of costs and attorney's fees.

**PROCEDURAL HISTORY and FACTS**

This appeal involves an administrative proceeding before the Louisiana Motor Vehicle Commission (herein after "LMVC" or "the Commission"). The Commission is the state agency that is authorized to enforce the Louisiana Motor Vehicles Sales Finance Act ("LMVSFA"), La. R.S. 6:969.1, *et seq.*[1] The Commission's executive director filed a complaint and notice of hearing charging LaRocca's Auto Sales, Inc. ("LaRocca's Auto") with a violation of La R.S. 6:969.35. The complaint alleged that "since at least October 2019" LaRocca's Auto has been engaging in the business of making consumer loans and/or origination of consumer credit sales without first having acquired a sales finance license as required under the LMVSFA.

The following facts and evidence were adduced at the March 8, 2021 hearing before the Commission.

Antoine Derouen, a compliance investigator with the Commission, testified he was advised by the Commission's licensing department that LaRocca's Auto was offering financing on its website. The licensing department requested that he visit LaRocca's Auto's premises to investigate and determine if LaRocca's Auto is required to obtain a sales finance license. He was also informed that the address for

---

[1] La. R.S. 6:969.6 defines "Commission" as the Louisiana Motor Vehicle Commission and the Commission's authority to enforce the LMVSFA is set forth in La. R.S. 6:969.40 D.

LaRocca's Auto, 2604 West Napoleon, in Metairie, was the same address as Car City Autoplex ("Car City") and that they shared the same inventory based on their respective websites.

Mr. Derouen testified that on October 14, 2019, prior to visiting LaRocca's Auto's premises, he reviewed the websites for LaRocca's Auto and Car City. He determined that they shared the same inventory and confirmed that LaRocca's Auto's website offered financing. Mr. Derouen stated that the website offered financing through an online application with a link that stated "Apply Online." The link redirected him to the "loan application page," which he printed. He testified that this application indicates to the Commission that LaRocca's Auto is offering financing.

Mr. Derouen stated he also called the phone number listed on LaRocca's Auto's website to "shop the dealership for financing" and an individual answered "Car City Autoplex." He informed the individual that he called the phone number for LaRocca's Auto. The individual identified himself as Frank Amos and stated that he was the manager of LaRocca's Auto and Car City. Mr. Amos informed him that both businesses "shared the same phone number that – you could obtain the same vehicle, and that he handles both." Mr. Derouen stated that he wanted to view a vehicle and was told to make an appointment online. Mr. Amos told him that he could complete the application online "to speed up the process. That way, they would already have my credit run and see how much I was approved for ahead of time." Based on the information he acquired, Mr. Derouen determined that he should visit LaRocca's Auto and advise the owner that a sales finance license was required.

Upon arrival at LaRocca's Auto, Mr. Derouen spoke with Mr. Amos, who remembered him because Car City recently obtained a sales finance license. Mr. Derouen testified that Mr. Amos confirmed that he was the manager for LaRocca's

Auto and Car City, that he handles the daily operations for both businesses, and that both businesses were originating loans. Mr. Derouen informed Mr. Amos that a sales finance license was required and gave him an application to be completed by the owner of LaRocca's Auto, Joseph LaRocca, within 30 days. Mr. Amos indicated that he would assist Mr. LaRocca with completing the application because he recently obtained a sales finance license for Car City. Later during his testimony, Mr. Derouen testified that Mr. Amos stated that "since he handled the day to day administrative duties for Mr. LaRocca he would be the one completing it." While he was at LaRocca's Auto's premises, Mr. Derouen took two photographs of a "LaRocca Auto Sales" sign on the building shared by LaRocca's Auto and Car City.

Mr. Derouen again spoke with Mr. Amos a few days later and was informed that Mr. LaRocca was not present, but that Mr. LaRocca was given the application. He followed up on November 15, 2019, and Mr. Amos notified him that they needed additional time to submit the application. He informed Mr. Amos that he needed to speak with Mr. LaRocca, who called him back "a couple of hours later." Mr. LaRocca stated that there was "some confusion between him and Mr. Amos" and he "only received the application two days prior" and he requested an additional two weeks. When the application was not received, Mr. Derouen testified that he attempted to contact Mr. LaRocca at his place of business and spoke with Mr. Amos. Mr. Amos informed him that the application was complete, but Mr. LaRocca was attempting to obtain additional documents. Mr. LaRocca was granted an additional two-week extension. However, when he followed up, Mr. Amos told him that Mr. LaRocca obtained an attorney and would not be filing the application.

At the hearing, Mr. Derouen was shown the website, which still contained a link to "Apply Online" for financing. However, when the page was redirected, the loan application listed Car City instead of LaRocca's Auto. Although the website contained this change, the loan application page still had LaRocca's Auto's name

right above it and the application had not been removed from the website. Mr. Derouen testified that LaRocca's Auto is offering financing due to the loan application being on its website. He testified that the determining factor is that the loan application was on its website and according to "LMVC law," LaRocca's Auto was originating loans. He stated that offering and taking loan applications is "a part of originating," which requires a license. Mr. Derouen stated that as of the date of this hearing, a loan calculator, which calculates payments, was now also offered on the website. Mr. Derouen testified that in his opinion the "mere offering" of finance is sufficient to trigger a violation of the statute if a sales finance license is not obtained under the law.[2]

On cross examination, when asked if LaRocca's Auto is "making a consumer loan," Mr. Derouen replied "Yes, sir. His business is offering financing." He testified that "Mr. LaRocca via his website and the used car dealership is offering financing to consumers." Mr. Derouen affirmatively stated that his evidence that LaRocca's Auto was "making a consumer loan" was the blank application on the website with the business' name on the application. Mr. Derouen testified that LaRocca's Auto's manager, Mr. Amos, confirmed that LaRocca's Auto was "offering financing via the website," and he "handles all day-to-day operations" for LaRocca's Auto. Mr. Derouen conceded that he did not find nor attempt to locate a loan application filled out by Mr. LaRocca on behalf of LaRocca's Auto. He testified that "originating a loan" constitutes "taking the application and then forwarding it." When questioned about the language in La. R.S. 6:969.35 that specifically refers to a fine for "each *contract* originated," Mr. Derouen conceded that he did not find any contracts completed by Mr. LaRocca on behalf of LaRocca's

---

[2] During Mr. Derouen's testimony, the hearing notice, photographs, and website pages were offered and admitted into evidence. The Commission also offered printouts from the Louisiana Secretary of State's website to show that LaRocca's Auto and Car City, two separate businesses, are operating out of the same location. It is undisputed that Car City has a sales finance license.

Auto. Mr. Derouen stated LaRocca's Auto is in violation of the statute because the "website has a blank application" for financing, which a consumer can complete. He testified that under "LMVC law that is offering financing, and also constitutes originating a loan." He stated that "offering financing" constitutes the "beginning of originating the loan," and therefore, LaRocca's Auto is required to obtain a sales finance license.

Mr. Derouen acknowledged that the phone number on the website [504-304-0094] was answered "Car City Autoplex," not LaRocca's Auto. He stated that when he asked, Mr. Amos confirmed that LaRocca's Auto and Car City share the same phone number and the same building." Mr. Amos advised that Mr. LaRocca owned the lot that his dealership, Car City, is currently located and that he is the manager and handles the daily operations for both businesses. When he inquired as to how the sale of the vehicles would be handled since the inventory and price were the same on both websites, Mr. Amos informed him that "he was the one that made the final determination." Mr. Amos further confirmed that LaRocca's Auto and Car City both originate loans. Based on his conversation with Mr. Amos, Mr. Derouen stated that he did not investigate further to determine if the number listed was in fact LaRocca's Auto's phone number. He also testified that based on statements by Mr. Amos and the LaRocca's Auto sign on the building, he "knew" LaRocca's Auto "was operating out of that location." He further acknowledged that he did not investigate the website. He testified that he did not know how to determine the owner of the website and he did not know how a website is created.

When asked if he learned during his investigation that Mr. LaRocca did not sell used cars, Mr. Derouen replied "[h]is business sells used cars. Mr. LaRocca is there two days. Mr. Amos handles the day-to-day business. LaRocca's Auto Sales

is in the business of selling cars and offering financing."[3] Mr. Derouen confirmed that each time he called the business, he was not able to speak to Mr. LaRocca. He testified that Mr. Amos told him Mr. LaRocca was not present and that he was seldom at the dealership. He testified that Mr. Amos stated that Mr. LaRocca visited the dealership lot "no more than two days a month," and he indicated that he confirmed this fact with Mr. LaRocca.

Mr. Derouen testified that when he visited Mr. Amos at that location in March or April 2019 in regard to Car City's necessity to obtain a sales finance license, he did not observe the LaRocca's Auto sign on the building. He stated that "there was no signage . . . everything was Car City." He testified that LaRocca's Auto was not brought to his attention until October of 2019. He stated that if he had been aware at that time, he would have inquired as to LaRocca's Auto. He stated that even though both businesses operate in the same location, they would each need a sales finance license if they were both offering finance.

Lessie House, the executive director of the Commission, testified that she filed the complaint against LaRocca's Auto. She testified that it is the Commission's position that LaRocca's Auto is required to obtain a sales finance license for the business being conducted at its location. Ms. House testified that it is the Commission's "regular interpretation of the law" that "offering finance activities," such as those shown on the website, requires a sales finance license. She explained that one entity (*i.e.*, Car City) being licensed to offer financing at the same location, does not authorize the unlicensed entity (*i.e.*, LaRocca's Auto) to offer financing. LaRocca's Auto is required to have its own licensing.

On cross-examination, Ms. House acknowledged that she was familiar with LaRocca's Auto based on "an incident many years ago where Mr. LaRocca filed a

---

[3] At this point, counsel for the Commission clarified that the violation hearing notice was against LaRocca's Auto and not against Mr. LaRocca personally.

complaint against one of our Commissioners." She confirmed she had the ability to "look up his license" and see how long LaRocca's Auto has been in business. She stated that the Commission is "a small agency . . . and we look when we can."

Ms. House was referred to the complaint sent to LaRocca's Auto stating that LaRocca's Auto was in violation of La. R.S. 6:969.35, alleging that it was "making consumer loans or origination of consumer credit sales." Counsel for LaRocca's Auto inquired as to whether the Commission was alleging that LaRocca's Auto was "making consumer loans." Ms. House testified that she does not know whether LaRocca's Auto is "making consumer loans." She stated that the Commission did not charge LaRocca's Auto with "making consumer loans." She testified that the Commission alleged that LaRocca's Auto is "originating consumer credit sales" by taking an application for a consumer loan on its website. She stated that although a definition of origination is not in the language of the statute, it has been the position of the Commission that the origination of a loan "starts with the taking of an application." She conceded the word "application" is also not in the language of the statute but testified that the word "origination" means "from the beginning." She testified that the beginning of a consumer loan is an application, such as the application on the website. She further testified that the word "origination" means "an offer of sales financing" and/or an "offer to finance." She confirmed that the Commission does not have any written evidence that LaRocca's Auto completed an application offered on the website.

During her testimony, Ms. House was questioned by one of the Commissioners, Price LeBlanc, Jr., about finance contracts at dealerships. He asked if she was "aware that almost every retail contract, retail loan contract, that's originated at auto dealerships – the dealer is actually the lender, on the contract, as is legally the lender on that contract until – he sells that loan to a finance source," to which she replied "Yes, sir." Counsel for the Commission interrupted Mr.

LeBlanc's questioning to point out that whether "they got funded in the dealer's name or not" was not before the Commission. He stated that the Commission was not "looking at any he actually funded." He reiterated that the issue before the Commission was whether LaRocca's Auto was "offering financing" and that the Commission was "not prosecuting any particular loan that was made." Counsel for the Commission asserted that LaRocca's Auto is not charged with "the $1,000 a day portion of the statute for actually engaging – taking loan application and selling it off or issuing the credit . . . He's charged, as it's clearly stated, with originating by offering to finance on his website with applications." After further discussion between counsel as to whether the Commission had any applications filled out by LaRocca's Auto and whether LaRocca's Auto had any contracts filled out, Ms. House stated that the Commission was "not prosecuting any particular loan that was made." She testified that the application offered on the website is the beginning of the contract referred to in the statute. She stated that "[i]t's the origination of the loan process."

Joseph LaRocca testified that he is the owner of LaRocca's Auto located at 4604 West Napoleon Avenue, in Metairie. He testified that LaRocca's Auto's phone number is 504-887-2801 and that LaRocca's Auto has been licensed to sell used cars in Louisiana for approximately 31 years. He stated that he currently sells used cars "through referrals or people, past customers, they call me" and "then I go and take care of it for them." Mr. LaRocca testified that he only has three or four vehicles remaining on the lot. He testified that he does not do any financing of the cars that he sells and he does not send individuals to banks or finance companies for financing. Mr. LaRocca was shown the application on the website that provides, "Apply for an Auto Loan at LaRocca's," to which he testified that he had not seen it before this hearing. Mr. LaRocca testified that he did not put the form on the internet

and that the phone number on the website is not the phone number for LaRocca's Auto. He said that he did not know whose phone number was on the website.

Mr. LaRocca testified that he leases a part of his property located at 4604 West Napoleon Avenue to Car City and Mr. Amos. Mr. LaRocca stated he used to operate his dealership there exclusively and at that time, he would spend every day at that location selling cars. He testified that he does not do that anymore; instead, he is only there once or twice a month. He testified that although he maintains his license and has three or four cars on the lot, his full-time occupation is taking "care of construction and personal properties."

He testified that he objected to the Commission's allegation that he is in violation of the statute because he is not making consumer loans or originating consumer credit sales. Mr. LaRocca stated that Mr. Amos is his tenant and he is aware that Mr. Amos has his own dealership. Mr. LaRocca confirmed that there is a sign on the building for LaRocca's Auto, but emphasized that it has been in the same place for "at least 20 some-odd years." He testified that Mr. Amos would "occasionally" sell one of his vehicles on the lot, but reiterated that he only has three or four vehicles remaining on the lot. He testified that it was his intention to leave the sign up and also that Mr. Amos wanted to benefit from his "long years in business, to get all my goodwill." Mr. LaRocca testified that when he received the investigative report with Mr. Amos name in it, he contacted him. He testified that he never agreed that LaRocca's Auto's phone number would be the same as Car City, and in fact, LaRocca's Auto's phone number has never changed and has been the same "for years." In addition to letting Mr. Amos benefit from his goodwill, he testified that he left up the LaRocca's Auto sign because it is required by the Used Motor Vehicle Commission to have a sign and a phone number in order to maintain a used motor vehicle dealership license.

Mr. LaRocca testified that he does not remember speaking with Mr. Derouen.[4] He advised that he is the only person that answers the phone number for LaRocca's Auto. If someone wanted to speak with him, they could reach him at the number for LaRocca's Auto, 504-887-2801, or on his cell phone. He testified that Mr. Amos did not inform him that the Commission wanted him to fill out an application for a sales finance license. Mr. Amos only left a name and phone number on his desk and said that the Commission wanted him to call. Mr. LaRocca testified that he is not associated in any way with Car City and Mr. Amos is not the manager of LaRocca's Auto. He stated he did not tell Mr. Derouen that he was going to fill out the application or that he was gathering documents and he did not tell Mr. Amos to advise Mr. Derouen anything. Mr. LaRocca further testified that he did not have anything to do with the website using the LaRocca's Auto name, nor did he authorize or give Mr. Amos permission to create the website. He first learned about the website at the first hearing held on this complaint.[5]

On cross examination, Mr. LaRocca testified he was not aware of the website in his name or the application on the website until the first hearing on January 25, 2021. Immediately after the hearing, he contacted Mr. Amos. He said he could not say he "was surprised or not surprised" when he learned about the website, but he did question Mr. Amos about the website and application. Mr. Amos told him he created the website because he knew he "could get a lot of goodwill out of it." Mr. LaRocca testified that he told Mr. Amos to remove the application from the website. Mr. Amos told him that he put a request in to someone to remove the application from the website but "that it takes a while for them to correct any website." When asked why he did not personally take down the application from the website, Mr.

---

[4] When asked if he remembered talking to Mr. Derouen, Mr. LaRocca testified: "I can't say that I have. I don't remember."

[5] A hearing on this complaint was originally started on January 25, 2021, via Zoom. The hearing was subsequently continued to March 8, 2021, via Zoom, because Mr. Derouen was unavailable that day.

LaRocca stated that he did not have authority to remove content from a website that someone else created.

Mr. LaRocca emphasized that Mr. Amos was his tenant, who pays him rent. He testified that "if some customer comes in and is inquiring about one of my vehicles, I would hope he'll sell it." If he is able to sell one of his few remaining vehicles, Mr. LaRocca testified that he does pay Car City "half of his commission." He testified that Mr. Amos "can do whatever he wants with my cars as long as he can move them." However, Mr. LaRocca testified that Mr. Amos is not running his business nor does he answer the phone for LaRocca's Auto. Mr. LaRocca again testified that he is the only individual that answers the phone for LaRocca's Auto. Mr. LaRocca stated that he does not get involved in Mr. Amos's marketing techniques because he [LaRocca's Auto] only has "two or three cars" and he rents the lot to Mr. Amos. Mr. LaRocca testified that he does not believe he is responsible for how Mr. Amos markets the cars on the lot.

Mr. Amos testified that he is the owner and manager of Car City, a used car dealership, located at 4604 West Napoleon Avenue. He testified that he has been at that location for four and a half years. He testified that he does not own any part of LaRocca's Auto. He stated that he rents the lot from Mr. LaRocca and is his tenant. Mr. LaRocca has a couple of cars on the lot, but he does not do anything to sell them. He testified that he sells "whatever the customer wants." If he sells one of the few cars on the lot that belong to Mr. LaRocca, he does receive half the commission. However, Mr. Amos testified that he does not "even sell a car a month" for LaRocca's Auto because there are "only a few on the lot." He stated he's a "salesman." Mr. Amos testified that he does not handle LaRocca's Auto business.

Mr. Amos stated that he created the LaRocca's Auto website and placed the photographs showing the dealership name, LaRocca's Auto, and the application on the website. He testified that Mr. LaRocca did not have any input in the content on

the website. He testified that he controls the website and pays for it from Car City's bank account. Mr. Amos testified that the LaRocca's Auto and Car City websites are "cam websites." He explained that when you sign up for a website, the company automatically places your company name on the website. He testified that he did not direct the company to place LaRocca's Auto's name at the top of the application; it "came along with the website design." He stated that each page of the website is not individually designed; rather, it is "a website that they already have laid out, basically." He testified that he and Mr. LaRocca discussed the website and the application after the first hearing on this complaint and Mr. LaRocca asked him to remove the application. He contacted the company that created the website for him and requested that the application be removed from the website. He stated that he needed to follow up with them because they did not remove the application, they only changed the application to state Car City.

Mr. Amos testified that he wanted to leave the LaRocca's Auto sign on the building because he wanted to benefit from Mr. LaRocca's goodwill. He stated that was also his intention in using the LaRocca's Auto's name on the website. He testified that Mr. LaRocca did not give him authority or permission to put the application on the website. He testified that he thought he could put it on the website because he did not think he was breaking a rule. Mr. Amos testified that he did not tell Mr. Derouen (1) that Car City shared the same phone number with LaRocca's Auto; (2) that he was the manager for LaRocca's Auto; (3) that he handles all of Mr. LaRocca's business at LaRocca's Auto; (4) that LaRocca's Auto originates loans; (5) that he would help Mr. LaRocca fill out the application for the sales finance license; (6) that Mr. LaRocca would submit the application within 30 days; or (7) that Mr. LaRocca hired an attorney. He specifically testified that he could not have confirmed that LaRocca's Auto originated loans because it does not. He stated that he was aware that Mr. LaRocca had a separate phone number for LaRocca's Auto

and that the phone number on the LaRocca's Auto website is the phone number for Car City. Mr. Amos testified that he does not know Mr. LaRocca's schedule, but he does come in a couple of days a month. Although he may occasionally sell one of Mr. LaRocca's cars, he does not "run the business."

Mr. Amos testified that Car City has a sales finance license, and had previously received a notice from the Commission stating that he needed a sales finance license. He testified that he obtained a sales finance license only because he felt pressured, and proceeding with a hearing would cost more money.

At the conclusion of the hearing, counsel for LaRocca's Auto requested time to submit proposed findings of fact and conclusions of law, which was granted by the Commission. On March 23, 2021, counsel for LaRocca's Auto submitted a post-hearing memorandum, in which counsel argued that LaRocca's Auto is not a lender, does not make consumer loans, and is not a source for origination of consumer credit under La. R.S. 6:969.35. LaRocca's Auto further contended that the Commission failed to produce a single contract of consumer credit allegedly generated by LaRocca's Auto and argued that the application on the website did not constitute a loan origination of a credit sale. The memorandum did not contain any proposed findings of fact or conclusions of law by LaRocca's Auto.

On May 17, 2021, the parties appeared before the Commission for a ruling. Counsel for LaRocca's Auto stated that he did not make any proposed findings of fact or conclusions of law because LaRocca's Auto is not a lender based on the definitions in the statutes. Counsel for the Commission proposed three findings of fact and one conclusion of law, all of which were adopted by the Commission.

On June 16, 2021, the Commission issued the following findings of fact and conclusion of law, assessing a fine and costs against LaRocca's Auto:

## Findings of Fact:

1. LaRocca's Auto Sales, Inc. is a used motor vehicle dealer;

2. LaRocca's Auto Sales, Inc. publicly advertised *to make consumer loans* to purchase motor vehicles using Internet advertising;

3. LaRocca's Auto Sales, Inc. did not possess a Louisiana Motor Vehicle Commission Sales Finance license at the time it engaged in public advertising *to make consumer loans*.

## Conclusion of Law:

1. LaRocca's Auto Sales, Inc. *engaged in the business of making consumer loans* without the required license in violation of Louisiana Administrative Code Title 6. Part VII. Chapter 10-B Louisiana Motor Vehicle Sales Finance Act §969.35.   [Emphasis added.]

Considering the findings of fact and conclusion of law, the Commission, pursuant to its authority under La. R.S. 32:1251, *et seq*., assessed LaRocca's Auto a fine in the amount of $500.00 and court costs in the amount of $4,746.52 to be paid to the Commission.

LaRocca's Auto appealed to the Twenty-Fourth Judicial District Court seeking judicial review of the Commission's judgment.  On February 22, 2022, at the conclusion of the hearing, the trial court found that LaRocca's Auto was not a "Lender" under La. R.S. 6:969.6(20) and therefore, LaRocca's Auto "did not originate consumer credit transactions under the statute."  On March 10, 2022, the trial court issued a judgment reversing the Commission's "Findings of Fact No. 2 and No. 3" and its sole conclusion of law.  The trial court dismissed the administrative action of the Commission against LaRocca's Auto, finding that the "substantial rights of [LaRocca's Auto] have been prejudiced and [the Commission's] decision of June 16, 2021 is in error of law, arbitrary and capricious, is in excess of statutory authority, and is not supported by a preponderance of the evidence."  The trial court further awarded LaRocca's Auto $571.12 in costs and $9,000 in attorney's fees to be paid by the Commission.

The Commission timely filed this appeal, seeking reversal of the trial court's judgment and reinstatement of the Commission's administrative adjudication against LaRocca's Auto.

**STANDARD OF REVIEW**

Review of an administrative agency's decision is narrower than the standard of review applied to civil and criminal cases. Spears v. Louisiana Board of Practical Nurse Examiners, 16-587 (La. App. 5 Cir. 06/15/17), 223 So.3d 679, 687. A party aggrieved by a final agency decision in an administrative adjudication proceeding is entitled to have that decision initially reviewed by the trial court of the parish in which the agency is located. La. R.S. 49:978.1 A & B (formerly La. R.S. 49:964).[6] The review shall be conducted by the trial court without a jury and "shall be confined to the record." La. R.S. 49:978.1 D. "It is elementary that a court's function is not to weigh *de novo* the available evidence and to substitute its judgment for that of the agency." Spears, 223 So.3d at 687-688 (*quoting* Save Ourselves, Inc. v. La. Environmental Control Commission, 452 So.2d 1152, 1159 (La. 1984)). Functioning as a court of appeal, the trial court is a court of record and cannot receive new evidence. McCall v. Parish of Jefferson, 15-103 (La. App. 5 Cir. 10/28/15), 178 So.3d 174, 176.

A party aggrieved by the trial court's decision is entitled to appeal to the appropriate appellate court as in other civil cases. La. R.S. 49:979 (formerly La. R.S. 49:965).[7] When an appellate court reviews the trial court's judgment, no deference is owed by the appellate court to the trial court's factual findings or legal conclusions, "just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal." Spears, 223 So.3d at 688, (*quoting* Tomorrow's Investors, LLC v. State, 11-1616 (La. App. 1 Cir. 03/23/12),

---

[6] La. R.S. 49:964 was redesignated as La. R.S. 49:978.1 by Acts 2022, No. 663, §1.
[7] La. R.S. 49:965 was redesignated as La. R.S. 49:979 by Acts 2022, No. 663, §1.

92 So.3d 364, 367, writ denied, 12-886 (La. 06/01/12), 90 So.3d 444); Kelley Blue Book Co., Inc. v. Louisiana Motor Vehicle Commission, 16-281 (La. App. 5 Cir. 12/07/16), 204 So.3d 1139, 1145, writ denied, 17-32 (La. 02/10/17), 216 So.3d 49. An appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the trial court. Department of Children and Family Services Matter of J.M., 20-309 (La. App. 5 Cir. 03/31/21), 316 So.3d 178, 181-182; Sylvester v. City of New Orleans Through Code Enforcement and Hearings Bureau, 17-283 (La. App. 4 Cir. 10/11/17), 228 So.3d 285, 287.

Therefore, an appellate court reviews the trial court's judgment *de novo* and conducts an independent review of the relevant facts and law. Elio Motors, Inc. v. Louisiana Motor Vehicle Commission, 18-545 (La. App. 5 Cir. 03/27/19), 268 So.3d 1132, 1148, writ denied, 19-656 (La. 06/17/19), 274 So.3d 572. Consequently, this court will conduct its own independent review of the record in accordance with the standards set forth in La. R.S. 49:978.1 G to determine (1) if the findings of a statutory violation are supported by the facts of the record [findings of fact] and the applicable law [conclusions of law], and (2) if the administrative agency exceeded its authority or acted without a rational basis in imposing penalties. Id. at 136.

La. R.S. 49:978.1 G provides for the scope of judicial review of agency decisions and sets forth the exclusive grounds upon which an administrative agency's decision may be reversed or modified:

> G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not due regard shall be given to the agency's determination of credibility issues.

Any one of the six grounds listed in the statute is sufficient to modify or reverse an agency determination. Department of Children and Family Services Matter of J.M., 316 So.3d at 181. An arbitrary decision shows "disregard of evidence or of the proper weight thereof" while a capricious decision "has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence." Carpenter v. State, Dept. of Health and Hospitals, 05-1904 (La. App. 1 Cir. 09/20/06), 944 So.2d 604, 612, writ denied, 06-2804 (La. 01/26/07), 948 So.2d 174; Spears, 223 So.3d at 688. Where the law allows the agency to exercise discretion, the statute's plain language concludes that such exercise must be neither abusive nor clearly unwarranted. Carpenter, 944 So.2d at 612; La. R.S. 49:978.1 G(5). Subsection G(5) is used in reviewing an agency's exercise of discretion, its conclusions of law, and mixed questions of fact and law. Subsection G(6) is used in reviewing questions of fact and requires that due regard be given to credibility determinations based on an agency's or a tribunal's firsthand observations of witnesses. Elio Motors, Inc., 268 So.3d at 1148; Carpenter, 944 So.2d at 608-610. However, a fact-finder's "disbelief of witnesses...cannot be used as a means to supplant affirmative proof where none exists and thus afford the basis for a judgment." Carpenter, 944 So.2d at 610, citing Stroik v. Ponseti, 97-2897 (La. 09/09/97), 699 So.2d 1072, 1080. It is also well settled that "speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient to support a

judgment." Id., *citing* Pierce v. Phoenix Ins. Co., 213 So.2d 73, 76 (La. App. 1 Cir. 1968).

When the issue on judicial review involves the agency's evaluation of the evidence and application of law to facts, the court's review becomes intertwined. Elio Motors, Inc., 268 So.3d at 1149. Credibility determinations of evidence are considered as factual questions under La. R.S. 49:978.1 G(6), but the application of the law to the facts is a legal conclusion subject to analysis under La. R.S. 49:978.1 G(5). Id.; Carpenter, 944 So.2d at 609; Wild v. State, Dept. of Health and Hospitals, 08-1056 (La. App. 1 Cir. 12/23/08), 7 So.3d 1, 6-7.

**DISCUSSION**

On appeal, the Commission contends that the trial court erred (1) in reversing the Commission's Findings of Fact Nos. 2 and 3; (2) in reversing the sole conclusion of law; and (3) in awarding LaRocca's Auto court costs and attorney's fees. Specifically, the Commission contends that the findings of fact and conclusion of law are factually and legally supported under La. R.S. 49:978.1 G, and that it did not exceed its authority or act without a rational basis in imposing penalties against LaRocca's Auto. The Commission also asserts that the trial court exceeded its authority in awarding costs and attorney's fees to LaRocca's Auto. Accordingly, the Commission contends that the trial court's judgment should be reversed and the Commission's administrative adjudication against LaRocca's Auto should be reinstated. For the following reasons, we find the Commission's arguments are without merit.

The Commission filed a complaint against LaRocca's Auto for its alleged violation of La. R.S. 6:969.35, which provides in pertinent part:

> A. (10) Unless a person has first obtained a license from the commission or is exempt from licensing under R.S. 6:969.36, he shall not *engage in the business of making consumer loans **or** the origination of consumer credit sales* subject to this Chapter.

\*    \*    \*

D. Any person violating this Section may be fined one thousand dollars for *each contract originated* or purchased or for each debt waiver or debt forgiveness agreement issued or guaranteed without that person being properly licensed. The fine shall be payable to the commission. [Emphasis added.] [8]

*The Commission's Finding of Fact No. 1*

It is undisputed that LaRocca's Auto is a used motor vehicle dealer as found by the Commission. This fact is supported by evidence in the record. Mr. LaRocca testified that he is the owner of LaRocca's Auto, which is located at 4604 West Napoleon Avenue in Metairie, and that LaRocca's Auto is a licensed dealer of used cars.

*The Commission's Findings of Fact Nos. 2 and 3*

The Commission found that LaRocca's Auto publicly advertised *to make consumer loans* to purchase motor vehicles using internet advertising and that LaRocca's Auto did not possess a sales finance license at the time it engaged in public advertising to *make consumer loans*. The Commission contends that these findings of fact and conclusion of law are factually and legally supported by the record pursuant to the standard of review set forth in La. R.S. 49:978.1 G.

It is undisputed that LaRocca's Auto does not possess a sales finance license. However, based on a review of the entire record and giving "due regard" to the Commission's opportunity for first-hand observations at the hearing, we find the Commission's finding that LaRocca's Auto publicly advertised *to make consumer loans* to purchase motor vehicles using internet advertising is "not supported and sustainable by a preponderance of evidence" as required by La. R.S. 49:978.1 G(6).

---

[8] La. R.S. 6:969.41 provides:

A. Any person who willfully violates any provision of this Chapter shall be subject to a fine by the commission in an amount not to exceed five thousand dollars per violation.

B. The commission may render judgment for costs, or any part thereof, against any party to proceedings held or scheduled to be held before the commission as it may consider equitable. These costs shall include but shall not be limited to court reporter fees, commission attorney fees, the mileage and per diem of the commission, and other applicable reasonable costs.

C. Any person who is required to be licensed under this Chapter and who fails to timely obtain a license as herein provided may be ordered by the commission to pay a penalty of one hundred dollars in addition to the regular license fee herein provided.

The complaint sent to LaRocca's Auto alleged that "since at least October 2019," LaRocca's Auto "has been engaging in the business of making consumer loans and/or origination of consumer credit sales" pursuant to La. R.S. 6:969.35. At the hearing, after extensive questioning of the witnesses and discussions between counsel and the Commission as to whether the Commission was alleging that LaRocca's Auto *completed* any applications or contracts, or was engaged in the business of making consumer loans, counsel for the Commission and its witnesses unequivocally clarified numerous times that LaRocca's Auto was *not* charged with "*making consumer loans*." The Commission and its witnesses explicitly stated that LaRocca's Auto was charged with "the *origination* of consumer credit sales" because LaRocca's Auto was "offering" financing on its website through a credit/loan application. Counsel for the Commission argued, and its witnesses testified, that it is the position of the Commission that "offering" financing (*i.e.*, the blank credit/loan application on the website) is the beginning of originating a consumer credit sales.

Thus, all of the evidence presented by the Commission attempted to show that LaRocca's Auto was "*originating*" consumer credit sales, not "*making consumer loans*." The findings of fact **only** state that LaRocca's Auto was engaged in the business of "*making consumer loans,*" which is clearly "not supported and sustainable by a preponderance of evidence." Moreover, the Commission and its counsel expressly stated that LaRocca's Auto was not charged with "*making consumer loans,*" and that the Commission was not intending to prove that LaRocca's Auto was "*making consumer loans.*"

The Commission argues, *citing* Chaumont v. City of New Orleans, 20-17 (La. App. 4 Cir. 06/03/20), 302 So.3d 39, 50, that the jurisprudence holds that where the findings of fact and the reasons therefor are necessarily implicit in the record and the administrative determination is supported and sustainable by a preponderance of

evidence, the administrative decision is not invalid merely because the agency failed to explicitly articulate that which is self-evident.

Specifically, Counsel for the Commission argues that during the proceeding, the Commission knew the complaint against LaRocca's Auto was solely for its "origination of consumer credit sales;" and not for making consumer loans. The Commission contends that it "is implicit in the record that all evidence submitted was for the purpose of proving that LaRocca's Auto violated La. R.S. R.S. 6:969.35 by its origination of consumer credit sales." Thus, the Commission asserts that its "decision/order are supported and sustainable by a preponderance of the evidence." To the extent LaRocca's Auto argues that the Commission's judgment may be invalid due to the wording of the judgment, we find this argument is without merit for the following reasons.

First, the holding in Chaumont, supra, is distinguishable from the facts of this case. In Chaumont, the administrative hearing officer found that plaintiff violated certain provisions of the New Orleans city Code and Comprehensive Zoning Ordinance governing short-term rental properties. Chaumont, 302 So.3d at 42. Plaintiff appealed and the trial court affirmed the administrative hearing officer. Id. Plaintiff appealed alleging in part that the trial court erred in dismissing her suspensive appeal because the hearing officer failed to dictate her findings of fact and conclusions of law as required by La. R.S. 49:958.[9] Id. at 45. The Fourth Circuit held that the Administrative Procedure Act ("APA") only applies to state agencies and thus, the City of New Orleans ("the City"), a municipality, was excluded from complying with the APA. Id. at 49-50. The court further found that even if the hearing officer was subject to the provisions of La. R.S. 49:958, her failure to include findings of fact and conclusions of law in her decision was not fatal. Id. at 50. The

---

[9] La. R.S. 49:958 was re-designated as La. R.S. 49:977 by Acts 2022, No. 663, §1.

court explained that the City presented evidence that showed that plaintiff violated the City's ordinances and plaintiff did not offer any evidence in opposition. Id. In that case, the court found that although the hearing officer did not expressly articulate the basis of her decision under La. R.S. 49:958, the reasons for her ruling were evident from the record. Id. The court found that the failure to provide factual findings or conclusions of law under the circumstances of that case did not invalidate the hearing officer's ruling. Id.

Chaumont is distinguishable from the present case. In this case, the Commission, unlike the administrative agency in Chaumont, did in fact articulate specific findings of fact and conclusions of law. Upon review of the record, we find that the issue of whether the alleged violation was for making consumer loans or for the origination of consumer credit sales was discussed in depth and with some confusion throughout the hearing. Although the Commission stated at different times during the hearing that it was not charging or alleging that LaRocca's Auto was "making consumer loans," the findings of fact and conclusions of law articulated by the Commission specifically found that LaRocca's Auto was in fact "making consumer loans." The findings of fact and conclusions of law did not include "origination of consumer credit sales."

The Commission argues that it was *clear* that LaRocca's Auto was charged with a violation of engaging in the origination of consumer credit loans. While the evidence offered during the proceeding focused on the "offering" of finance through the application on the website (*i.e.*, the alleged origination of consumer credit sales violation), the record is equally clear that there were numerous discussions and questions as to whether LaRocca's Auto engaged in the business of making consumer loans and whether an actual completed contract was needed for making consumer loans and/or origination of consumer credit sales. This confusion as to the specific violation with which LaRocca Auto was charged by the Commission can

also be seen by the questions posed by Mr. LeBlanc, one of the commissioners, to Ms. House during her testimony concerning completed finance contracts. Consequently, contrary to the Commission's argument, the findings of fact and the reasons suggesting a finding that LaRocca's Auto was engaged in the "origination of consumer credits sales," instead of "making consumer loans," is not *implicit* in the record. The Commission made an *express* finding that LaRocca's Auto was "making consumer loans." Based upon a review of the Commission's specific findings of fact, the administrative determination by the Commission that LaRocca's Auto was "making consumer loans" is not supported and sustainable by a preponderance of evidence and is not self-evident.

Secondly, the record shows that the findings of fact were specifically suggested by counsel for the Commission and were adopted without change by the Commission. Therefore, the Commission cannot now state that the language used in the findings of fact necessarily included "origination of consumer credit sales" or that it was implicit and self-evident that the Commission found and intended to conclude that LaRocca's Auto engaged in the origination of consumer credits based on the record. The findings of fact do not support the Commission's assertion.

Thirdly, even assuming the Commission meant to include "origination of consumer credit sales" in the findings of fact or that this finding was implicit and self-evident in the record, and pretermitting a discussion of the word "origination," the conclusion that LaRocca's Auto originated consumer credit sales is not supported by the record and sustainable by a preponderance of evidence. The Commission contended that LaRocca's Auto was "offering" finance through an application on the LaRocca website and thus, was engaging in the *origination of consumer credit sales*. Although the website is named LaRocca's Auto and the credit/loan application located on the website includes LaRocca's Auto's name, the undisputed evidence established that (1) Mr. Amos, the owner and manager of Car

City, created the "LaRocca's Auto" website without Mr. LaRocca's knowledge, permission, or authority; (2) Mr. Amos was not the manager of LaRocca's Auto; (3) Mr. Amos did not handle the daily operations of LaRocca's Auto; (4) Mr. Amos was not the agent of LaRocca's Auto;[10] (5) Mr. LaRocca was not aware of the website or application on the website until the first hearing on January 25, 2021, clearly *after* the alleged violation in the complaint; (6) Mr. LaRocca immediately requested Mr. Amos to remove the application from the website; and (7) Mr. LaRocca had no authority or control over the website content and no authority to remove the application from the website because it was created by Mr. Amos. Thus, a finding that LaRocca's Auto engaged in the making of consumer loans or the origination of consumer credit sales via the application on the website, is likewise not supported or sustainable by a preponderance of evidence.

Accordingly, for the reasons stated herein, we find the Commission's findings of fact and credibility determinations are not supported and sustainable by a preponderance of evidence as required under La. R.S. 49: 978.1 G(6).

*The Commission's Conclusion of Law*

La. R.S. 49: 978.1 G(5) permits a court to reverse or modify an administrative determination if the determination is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." In determining the present matter, the Commission heard testimony and received evidence at the hearing as to whether LaRocca's Auto violated La. R.S. 6:969.35. Based on its findings of fact, the Commission concluded that LaRocca's Auto *engaged in the business of making consumer loans* without the required license in violation La. R.S. 6:969.35.

---

[10] The Commission offered as an exhibit a printout from the Secretary of State's Office showing the owners, officers and agents of LaRocca's Auto and Car City. Mr. Amos is not listed in any capacity as an agent or officer of LaRocca's Auto.

For the reasons stated herein, upon our independent review of the record in accordance with the standards provided by La. R.S. 49:978.1 G(5), we find that the Commission's findings of fact that La Rocca's Auto publicly advertised to *make consumer loans* to purchase motor vehicles without a sales finance license is not supported and sustainable by a preponderance of evidence. We further find based on the applicable law and facts of this case that the Commission's legal conclusion that LaRocca's Auto *engaged in the business of making consumer loans* without the required sales finance license in violation La. R.S. 6:969.35, was arbitrary and capricious. Consequently, we find the Commission exceeded its authority and acted without a rational basis in assessing a fine and costs against LaRocca's Auto.

Even assuming that the Commission's findings of fact *and* conclusion of law implicitly included "origination of consumer credit sales," the facts do not support a finding that LaRocca's Auto engaged in the business of making consumer loans ***and/or*** the origination of consumer credit sales under La. R.S. 6:969.35.

The starting point in the interpretation of any statute is the language of the statute itself, as what a legislature states in the text of a statute is considered the best evidence of its intent and will. Mayeux v. Charlet, 16-1463 (La. 10/28/16), 203 So.3d 1030, 1036. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:3; La. R.S. 1:4. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10; La. R.S. 1:3.

Statutes which authorize the imposition of a penalty must be strictly construed. Elio Motors, Inc., 268 So.3d at 1150; Gibbs Const. Co., Inc. v. State, Dept. of Labor, 540 So.2d 268 (La. 1989). An administrative agency must act in conformity with its statutory authority, which it cannot exceed. Elio Motors, Inc.,

268 So.3d at 1150; Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13, 20 (La. 1981). An administrative agency "cannot go too far afield from the letter of the law even if it perceives that it is furthering the law's spirit." Benson & Gold Chevrolet, 403 So.2d at 20.

La. R.S. 6:969.35 provides in pertinent part:

> A. (1) Unless a person has first obtained a license from the commission or is exempt from licensing under R.S. 6:969.36, he *shall not engage in the business of making consumer loans **or** the origination of consumer credit sales* subject to this Chapter.
>
> *  *  *
>
> D. Any person violating this Section may be fined one thousand dollars for *each contract originated* or purchased or for each debt waiver or debt forgiveness agreement issued or guaranteed without that person being properly licensed. The fine shall be payable to the commission. [Emphasis added.]

To determine whether LaRocca's Auto is in violation of La. R.S. 6:969.35, it is necessary to look at the meaning of the words used in the statute. See La. R.S. 6:969.35; La. R.S. 6:969.6; La. R.S. 6:969.7;[11] 15 U.S.C. 1601 *et seq.*; 12 C.F.R. 226.1 *et seq.*

"Consumer loan" is defined as "a loan of money or its equivalent made by a lender, the proceeds of which are used by the consumer to purchase or refinance the purchase of a motor vehicle, or which proceeds are used for personal, family, or household purposes, including debts created by the use of a lender credit card, revolving loan account, or similar arrangement, as well as insurance premium financing, with the lender acquiring a purchase money security interest in the purchased motor vehicle." La. R.S. 6:969.6(9). "Lender" is defined as "the originator of credit under a consumer loan, as well as any assignee or transferee of the consumer's contract." La. R.S. 6:969.6(20). "Consumer credit sale"[12] is defined

---

[11] La. 6:969.7 provides in pertinent part:
A. As a general rule of construction, persons may look to comparable rules, definitions, and principles under the Federal Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z of the Board of Governors of the Federal Reserve System, 12 C.F.R. 226.2 *seq.*, for guidance in further defining and interpreting terms and concepts that are not otherwise defined or specified under the provisions of this Chapter.
[12] "Credit sale" is defined as "a sale in which the seller is a creditor." 12 C.F.R. 226.2(16). "Credit sale" is also defined as "any sale in which the seller is a creditor." 15 U.S.C. 1602(h).

as "the sale of a motor vehicle on credit[13] under which the seller[14] acquires a purchase money security interest in the purchased vehicle, and incident to which a credit service charge[15] is charged and the consumer is permitted to defer all or part of the purchase price or other consideration in two or more installments excluding the down payment." La. R.S. 6:969.6(8). "Seller" is defined as the seller of a motor vehicle, including the seller of a motor vehicle under a consumer credit sale, as well as any assignee or transferee of the consumer's contract." La. R.S. 6:969.6(30). "Consumer" is defined as "a natural person who enters into a consumer loan or consumer credit sale of a motor vehicle to be used primarily for personal, family, or household purposes." La. R.S. 6:969.6(6). "Contract" is defined as "the consumer's retail installment contract, note, agreement, or other evidence of indebtedness executed in connection with a motor vehicle credit transaction." La. R.S. 6:969.6(10). "Motor vehicle credit transaction" is defined as "a consumer loan or a consumer credit sale involving a Louisiana consumer, or that is otherwise made

---

[13] Pursuant to 12 C.F.R. 226.2(14), "Credit" is defined as "the right to defer payment of debt or to incur debt and defer its payment." "Credit" is also defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. 1602(f).

[14] "Creditor" is defined in pertinent part as:
(i) A person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

\* \* \*

(v) A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of §226.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year. A person regularly extends consumer credit if, in any 12–month period, the person originates more than one credit extension that is subject to the requirements of §226.32 or one or more such credit extensions through a mortgage broker.

"Creditor" is also defined as referring "only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors." 15 U.S.C. 1602(g).

[15] "Credit service charge" is defined, in pertinent part, under La. R.S. 6:969.6(14) as "the sum of the following":
(a)(i) All charges payable directly or indirectly by the consumer and imposed directly or indirectly by the seller as a requirement of the extension of credit, including any of the following types of charges that are applicable: interest; time price differential; service; carrying or other charge, however denominated; points and discount fees; and premium or other charge for any guarantee or insurance protecting the extender of credit against the consumer's default or other credit loss.
(ii) Charges paid by the consumer for investigating the consumer's credit worthiness.

subject to this Chapter." La. R.S. 6:969.6(24). "Motor vehicle" is defined in pertinent part as a "used transportation device, including automobiles . . . that are operated over the public highways and the streets of this state." La. R.S. 6:969.6(23)(a).

The words "engage" and "origination" are not defined in this Chapter. The meaning and/or interpretation of these words, especially origination, were discussed in the proceeding before the Commission.

On appeal, the Commission contends 15 U.S.C.A. 1602 is beneficial in interpreting "origination" because it defines a *mortgage originator* to mean "any person who, for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain . . . assists a consumer in obtaining or apply to obtain a residential mortgage loan." The Commission also asserts that pursuant to 12 C.F.R. 226.1, one of the elements consider in the application of Regulation Z is that an individual or business extends credit when credit is offered or extended to consumers. The Commission argues that the testimony from Ms. House and Mr. Derouen and the evidence, including the LaRocca's Auto credit/loan application, established that LaRocca's Auto's "offer of credit to finance sales of its used cars along with the providing of credit and loan applications is LaRocca's Auto's engaging in the business of making consumer loans or the origination of consumer credit sales." Additionally, the Commission argues that because the legislature did not define "engagement" or "origination," this court must give deference to the "long standing interpretation" by the Commission as to the meaning of La. R.S. 6:969.35 with regards to the administrative agency's application of the statute. In this case, the Commission asserts that Ms. House testified that the long standing interpretation is that origination of consumer credit sales includes offering an application for credit to a consumer and offering it via the website. We disagree.

While the administrative construction given to a statute by the agency responsible for its implementation may be a persuasive indication of its true meaning in some instances, an administrative interpretation cannot be given weight where it is contrary to or inconsistent with the statute, and determination of legislative intent is a judicial matter.  See Triangle v. PPG Indus., Inc., 332 So.2d 777, 782 (La. 1976); City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 08-510 (La. App. 1 Cir. 09/23/08), 995 So.2d 32, 38, writ denied, 08-2554 (La. 01/09/09), 998 So.2d 726; Boyd v. Louisiana Real Estate Com'n, 581 So.2d 304 (La. App. 1 Cir. 1991).

Black's Law Dictionary defines "engage" as "to employ or involve oneself; to take part in; to embark on."[16]  Originator is defined as "someone who conceives of something and starts it" or "the entity that initiates a funds transfer subject to the UCC article 4A."[17]  Origination fee is defined as "a fee charged by a lender for preparing and processing a loan."[18]  Originate is defined as "to take or have origin: Begin" or "to give rise to: Initiate."[19]

La. R.S. 6:969.35 provides that unless a person has first obtained a license from the commission or is exempt, he shall not "engage in the business of making consumer loans or the origination of consumer credit sales."  Under the plain language of the statute, we find the statute does not mandate that a person who *offers* a blank credit/loan application on a website be required to be licensed.  We find the Commission's interpretation of the statute, under the facts of this case, are contrary to and/or inconsistent with the statute.  Considering the plain language of the statute and the definitions set forth herein, we find the statute was intended to apply to those who shall "engage in the business of making consumer loans or the origination of

---

[16] Black's Law Dictionary (11th ed. 2019).
[17] Id.
[18] Id.
[19] "Originate." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/originate.  Accessed 7 Feb. 2023.

consumer credit sales" (*i.e.*, a lender and/or creditor). The facts as submitted to the Commission through evidence and testimony did not support or sustain by a preponderance of evidence a finding that LaRocca's Auto is a lender and/or creditor for the purpose of engaging in the business of making consumer loans or the origination of consumer credit sales.[20] Moreover, Mr. Amos, who was not a manager or agent of LaRocca's Auto, without authority of Mr. LaRocca, created the website that contained a blank credit/loan application. The record further shows that Mr. LaRocca had no knowledge of the website or the application prior to the first hearing and it is undisputed that he had no control over the content of the website because it was not created by him. It is also undisputed that Mr. Derouen did not investigate who created the website or whether Mr. Amos had authority to create the website and/or offer a blank credit/loan application on the website.

Upon our independent review of the record in accordance with the standards set forth in La. R.S. 49:978.1 G, we find that the Commission's findings of fact that LaRocca's Auto publicly advertised to *make consumer loans* to purchase motor vehicles without a sales finance license is not supported and sustainable by a preponderance of evidence. We further find based on the applicable law and facts, the Commission's legal conclusion that LaRocca's Auto *engaged in the business of making consumer loans* without the required sales finance license in violation La. R.S. 6:969.35, was arbitrary and capricious. Consequently, for the numerous reasons stated herein, we find the Commission exceeded its authority and acted without a rational basis in assessing a fine and costs against LaRocca's Auto for an alleged violation of La. R.S. 6:969.35. Accordingly, we affirm in part the trial court's judgment reversing the Commission's Findings of Fact Nos. 2 and 3 and the

---

[20] In this case, the Findings of Fact and Conclusion of Law were based on the Commission's findings that LaRocca's Auto was "*making consumer loans*," not that LaRocca's Auto was engaged in the *origination* of consumer credit sales.

Commission's conclusion of law, and the trial court's dismissal of the administrative proceeding against LaRocca's Auto.

*Costs and Attorney's Fees*

The Commission contends the trial court erred in awarding costs and attorney's fees to LaRocca's Auto. In its appellate brief, the Commission argues that the law does not authorize the award of costs and attorney's fees against the Commission pursuant to La. R.S. 49:964.1 A. The Commission asserts that this statute authorizes assessments against an agency only when the agency files for judicial review and in this case, LaRocca's Auto petitioned for judicial review. Therefore, the Commission asserts that there was no statutory basis for the trial court to assess costs and attorney's fees against the Commission.

In opposition, LaRocca's Auto argues that La. R.S. 49:965.1 governs appeals by "small businesses, *i.e.*, the public." LaRocca's Auto contends that under this statute the trial court had authority to assess costs and attorney's fees as it deemed reasonable under the statute.

In reply, the Commission contends that LaRocca's Auto did not submit evidence that it satisfied the "applicable criteria set forth in 13 C.F.R. Part 121" to establish that it is classified as a "small business" entitled to "reasonable litigation expenses." Additionally, the Commission asserts that if La. R.S. 49:965.1 is applicable, the trial court exceeded its authority under the statute by awarding $9,571 in costs and attorney's fees to LaRocca's Auto and against the Commission. The Commission contends that the statute provides a maximum award of $7,500 in attorney's fees and costs. Thus, if entitled, any award for costs and attorney's expenses is limited to $7,500.

Under Louisiana law, attorney's fees are recoverable only where specifically authorized by statute or contract. <u>Hoffman v. 21st Century North America Ins. Co.</u>, 14-2279 (La. 10/02/15), 209 So.3d 702, 707; <u>Garden Lakes Condominium</u>

Homeowners Ass'n, Inc. v. Perrier, 10-1016 (La. App. 5 Cir. 05/24/11), 66 So.3d 1147, 1148. La. R.S. 49:978.2 (formerly La. R.S. 49:964.1)[21] provides in pertinent part:

> A. *If an agency or official thereof, or other person acting on behalf of an agency or official thereof, files a petition for judicial review* of a final decision or order in an adjudication proceeding and such agency, official, or person does not prevail in the final disposition of the judicial review, the agency shall be responsible for the payment of reasonable attorney fees and court costs of the other party.

La. R.S. 49:980 (formerly La. R.S. 49:965.1)[22] provides in pertinent part:

> A. When a small business files a petition seeking: (1) relief from the application or enforcement of an agency rule or regulation, (2) judicial review of the validity or applicability of an agency rule, (3) judicial review of an adverse declaratory order or ruling, or (4) judicial review of a final decision or order in an adjudication proceeding, the petition may include a claim against the agency for the recovery of reasonable litigation expenses. *If the small business prevails and the court determines that the agency acted without substantial justification, the court may award such expenses, in addition to granting any other appropriate relief.*
>
> *    *    *
>
> D. As used in this Section:
>
> (1) "*Reasonable litigation expenses*" means any expenses, *not exceeding seven thousand five hundred dollars* in connection with any one claim, reasonably incurred in opposing or contesting the agency action, *including costs and expenses* incurred in both the administrative proceeding and the judicial proceeding, fees and expenses of expert or other witnesses, *and attorney fees*.
>
> (2) "*Small* business" means a small business as defined by the Small Business Administration, which for purposes of size eligibility or other factors, *meets the applicable criteria set forth in 13 Code of Federal Regulations, Part 121, as amended*.

Contrary to the Commission's assertion, and based on the clear language of the statute, La. R.S. 49:978.2 is not applicable to this proceeding because the Commission did not file for judicial review with the trial court. Here, LaRocca's Auto filed a petition for judicial review with the trial court and therefore, the provisions of La. R.S. 49:980 appear to apply to the award of costs and attorney's fees to LaRocca's Auto and against the Commission, if the criteria of the statute applies to the facts of this proceeding.

---

[21] La. R.S. 49:964.1 was re-designated as La. R.S. 49:978.2 by Acts 2022, No. 663, §1.
[22] La. R.S. 49:965.1 was re-designated as La. R.S. 49:980 by Acts 2022, No. 663, §1.

La. R.S. 49:980 is penal in nature because it provides for an award of reasonable litigation expenses, including attorney's fees and costs. Spine Diagnostics Center of Baton Rouge, Inc. v. Louisiana State Bd. Of Nursing ex rel. Louisiana Dept. of Health and Hospitals, 08-813 (La. App. 1 Cir. 12/23/08), 4 So.3d 854, 869, writs denied, 09-144 (La. 04/13/09), 5 So.3d 163 and 09-188 (La. 04/13/09), 5 So.3d 163. It is a well-settled rule of statutory construction that penal statutes must be strictly construed and their provisions shall be given a genuine construction according to the fair import of their words, taken in their usual sense, with regard to the context and with reference to the purpose of the provision. Id. This rule of law has specifically been applied in the area of administrative law. Gibbs Constr. Const. Co., 540 So.2d at 269; Benson & Gold Chevrolet, Inc., 403 So.2d at 20.

For a court to have authority to award the expenses of an administrative proceeding, it must be shown that the "small business" (1) prevailed in court and (2) "the agency acted without substantial justification." Mid-City Automotive, LLC v. Louisiana Department of Public Safety, 19-1219 (La. App. 1 Cir. 05/11/20), 304 So.3d 457, 464. Here, LaRocca's Auto prevailed on its petition for judicial review in the trial court. At the conclusion of the hearing before the trial court, the trial court requested counsel for LaRocca's Auto to prepare a judgment and to leave a blank space for costs and attorney's fees. The trial court then requested counsel for LaRocca's Auto to submit an itemized invoice with costs and attorney's fees for its consideration as to any amount to be awarded to LaRocca's Auto. After the judgment was prepared and circulated, counsel for LaRocca's Auto submitted the judgment and an invoice with costs in the amount $586.12 and attorney's fees in the amount of $16,135.00 to the trial court for its consideration. The trial court signed and issued the judgment, awarding LaRocca's Auto costs in the amount of $571.12 and attorney's fees in the amount of $9,000.

An award of attorney's fees will not be modified on appeal absent a showing of an abuse of discretion. Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London, 19-562 (La. App. 5 Cir. 05/28/21), — So.3d —, 2021WL2178482, writs denied, 21-1755 (La. 02/08/22), 332 So.3d 665 and 21-1745 (La. 02/08/22), 332 So.3d 640. When awarding attorney's fees, the trial court must determine the reasonableness of the attorney's fees to be awarded. Rivet v. State, Dep't of Transp. and Dev., 96-145 (La. 09/05/96), 680 So.2d 1154, 1160, 1161. The trial court should consider the following factors in determining a reasonable amount of attorney's fees to award: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation: (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. Id.

Based on the record and for the following reasons, the trial court erred in awarding costs and attorney's fees: (1) the record does not show that the trial court made a finding that the Commission acted without substantial justification pursuant to La. R.S. 49:980 A; (2) the record does not contain any evidence to show that the trial court considered the Rivet factors in awarding attorney's fees and no evidence was introduced at the hearing; (3) the trial court's award exceeds the maximum amount of reasonable litigation expenses as set forth in La. R.S. 49:980 D(1); (4) the record does not contain any evidence that LaRocca's Auto is a "small business" as classified pursuant to La. R.S. 49:980 D(2); and (5) the record does not support the trial court's award of costs, which is less than the amount requested by LaRocca's Auto.[23] Accordingly, the trial court's judgment awarding costs in the amount of

---

[23] The invoice is not itemized as to costs; rather, it only states the alleged total amount of costs. Therefore, it does not appear based on the record, that the trial court appropriately determined the reasonableness of the costs alleged by LaRocca's Auto.

$571.12 and attorney's fees in the amount of $9,000 is reversed and the matter is remanded for further proceedings on the issue of costs and attorney's fees.

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed in part as to reversing the Commission's Findings of Fact Nos. 2 and 3 and the Commission's Conclusion of law and dismissing the administrative proceeding against LaRocca's Auto. The trial court's judgment is reversed in part and remanded for further proceedings as to the award of costs and attorney's fees.

**<u>AFFIRMED IN PART; REVERSED IN PART; and REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 10, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-197**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
ROBERT G. HARVEY, SR. (APPELLEE)          ADRIAN F. LAPEYRONNIE, III (APPELLANT)

### MAILED

HANNON VEY LAPLACE (APPELLEE)
ATTORNEY AT LAW
600 NORTH CARROLLTON AVENUE
NEW ORLEANS, LA 70119